Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| César Cruz Roche<br><br>Recurrido<br><br>v.<br><br>Janet de Jesús Colón y otros<br><br>Peticionarios | Certiorari<br><br>2011 TSPR 95<br><br>182 DPR ____ |

Número del Caso: CC - 2010 - 191

Fecha: 23 de junio de 2011

Tribunal de Apelaciones:

　　　　　　　Región Judicial de San Juan, Panel III

Juez Ponente:　　　Hon. Luis A. Rosario Villanueva

Abogada de la Parte Peticionaria:

　　　　　　　Lcda. Liudmila Ortiz Marrero

Abogados de la Parte Recurrida:

　　　　　　　Lcda. Luzbeth Rodríguez Carbonell
　　　　　　　Lcdo. Edgar Andújar Jiménez

Materia:　　　División de Comunidad de Bienes y/o Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

César Cruz Roche

    Recurrido

       v.                        CC-2010-191      Certiorari

Janet de Jesús Colón y Otros

    Peticionarios

Opinión del Tribunal emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 23 de junio de 2011.

En el día hoy debemos resolver si una persona favorecida por una sentencia judicial que le compensa económicamente al amparo de la Ley Núm. 100, *infra*, por haber sufrido discrimen en el empleo, puede transar con su antiguo patrono por una cantidad inferior, sin el aval de su ex cónyuge, y en el proceso afectar partidas que se reputan gananciales.

El Tribunal de Apelaciones resolvió que la beneficiaria de la sentencia judicial tenía que contar con el consentimiento de su ex cónyuge, coadministrador de la comunidad de bienes surgida entre ellos, para transar con su patrono una compensación menor a la originalmente concedida.

Por los fundamentos expuestos a continuación, revocamos.

I.

El Sr. César Cruz Roche y la Sra. Janet de Jesús Colón estuvieron casados desde mayo de 1996 hasta enero de 2003, cuando advino final y firme su divorcio y cesó de existir la sociedad de bienes gananciales que había entre ambos. El divorcio fue por consentimiento mutuo y en la correspondiente sentencia se recogieron los acuerdos alcanzados por las partes respecto a cómo dividir los bienes adquiridos y las deudas contraídas durante la vigencia del matrimonio. Nada se estableció, sin embargo, sobre cómo dividir la compensación económica que podría recaer a favor de la señora De Jesús Colón por motivo de un pleito sobre discrimen en el empleo que ella había incoado al amparo de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146 *et seq.,* conocida como "Ley de Discrimen en el Empleo". (Ley Núm. 100)

En junio de 1997, vigente el matrimonio, la señora De Jesús Colón fue despedida de su empleo en la empresa Whitehall-Robins Laboratories. A raíz del despido, la señora De Jesús Colón, el señor Cruz Roche y la sociedad de bienes gananciales compuesta por ambos demandaron a Whitehall-Robins Laboratories al amparo de la Ley Núm. 100. No obstante, el Tribunal de Primera Instancia desestimó la acción del señor Cruz Roche y de la sociedad de bienes gananciales al resolver que la referida Ley Núm. 100 está diseñada para auxiliar y beneficiar únicamente a los

empleados objeto de discrimen y no cobija a los familiares de éstos.

La demanda por discrimen siguió su curso y el foro primario condenó a Whitehall-Robins Laboratories a pagarle a la señora De Jesús Colón una compensación de $736,000. La sentencia del foro primario, emitida el 21 de julio de 2003 cuando ya estaba disuelto el matrimonio, incluía $293,000 por lucro cesante y $75,000 por angustias mentales. Ambas partidas se duplicarían como penalidad por el discrimen, tal como lo contempla la Ley Núm. 100, para un total de $736,000, monto que no incluye los honorarios de abogado.

Insatisfecha con lo anterior, Whitehall-Robins Laboratories apeló ante el Tribunal de Apelaciones el dictamen judicial que le otorgó la compensación económica a la señora De Jesús Colón. Ante este escenario, la señora De Jesús Colón —ya divorciada y con la custodia de dos hijos universitarios— decidió que le resultaba más conveniente transigir con su antiguo patrono y alcanzar un acuerdo que la compensara por $137,500 en la partida de lucro cesante. Al hacer el referido acuerdo extrajudicial, la señora De Jesús Colón no consultó ni buscó el aval o consentimiento de su ex cónyuge, el señor Cruz Roche.

Posteriormente, la señora De Jesús Colón y su antiguo patrono presentaron al tribunal el acuerdo transaccional alcanzado. El señor Cruz Roche, por su parte, presentó una moción solicitando intervención y en oposición a que se dejara sin efecto la sentencia original del foro primario. En enero de 2005, el Tribunal de Primera Instancia acogió

el acuerdo transaccional y, a su vez, denegó la solicitud de intervención del señor Cruz Roche.

Acto seguido, el señor Cruz Roche presentó el 1 de febrero de 2005 una demanda sobre división de bienes y cobro de dinero en el Tribunal de Primera Instancia. En ésta, el señor Cruz Roche reclamó la mitad de las partidas gananciales que la sentencia judicial le había otorgado originalmente a la señora De Jesús Colón y le solicitó al tribunal que adjudicara la controversia mediante sentencia sumaria. El señor Cruz Roche planteó que, tras la disolución del matrimonio, surgió una comunidad de bienes post ganancial que debía ser administrada por ambos cónyuges y que la señora De Jesús Colón, al llegar a un acuerdo extrajudicial, realizó un acto dispositivo de bienes en común sin su consentimiento.

Al momento de la división de bienes, el Tribunal de Primera Instancia determinó que, en efecto, una porción de la compensación a la señora De Jesús Colón – aquella relacionada con los salarios dejados de cobrar durante la vigencia del matrimonio – era de carácter ganancial y, como tal, debía concedérsele la mitad de la referida partida al señor Cruz Roche en la división de los bienes. Por consiguiente, el tribunal le ordenó a la señora De Jesús Colón pagarle al señor Cruz Roche $135,025, cantidad que el tribunal determinó que representaba la mitad de lo que le fue otorgado originalmente a ella por concepto de lucro cesante.

Así, pues, el foro de instancia determinó, mediante sentencia sumaria a favor del señor Cruz Roche, que la suma recibida por la señora De Jesús Colón al amparo de la Ley Núm. 100 era parcialmente ganancial y que no se estableció nada al respecto en las estipulaciones que acompañaron el divorcio por consentimiento mutuo. Inconforme, la señora De Jesús Colón acudió al Tribunal de Apelaciones. Argumentó, en esencia, que la Ley Núm. 100 y su jurisprudencia interpretativa establecen que el referido estatuto está diseñado para cobijar y beneficiar exclusivamente al empleado afectado y, como tal, el señor Cruz Roche no tenía derecho a partida económica alguna, pues ella era la única con legitimación activa e intereses protegidos en el pleito.

En octubre de 2009, el Tribunal de Apelaciones confirmó al foro primario al resolver que una porción de la compensación económica a favor de la señora De Jesús Colón era ganancial y que, por ello, le correspondía al señor Cruz Roche cobrar la mitad de la partida de lucro cesante. El foro apelativo intermedio, sin embargo, determinó que el Tribunal de Primera Instancia había errado al dirimir la controversia de autos mediante sentencia sumaria y, por entender que había asuntos todavía en controversia, devolvió el caso al foro primario para que se celebraran las correspondientes vistas evidenciarias. Inconforme con esta parte de la decisión, el señor Cruz Roche solicitó reconsideración al Tribunal de Apelaciones.

Acogida la moción de reconsideración, en enero de 2010 el Tribunal de Apelaciones emitió otra sentencia en la que determinó que:

> De la prueba presentada durante la vista en su fondo, quedó probado que desde el 1997 hasta el 2002 la [señora De Jesús Colón] generó la suma de $270,050 en concepto de lucro cesante, por lo que al apelado le correspondía la mitad de dicha cantidad sin importar el verdadero resarcimiento por ésta luego del acuerdo confidencial suscrito con [Whitehall-Robins Laboratories]. Al no haberse consultado con el apelado el acuerdo antes mencionado la apelante está obligada a responder por la suma establecida en la sentencia [del Tribunal de Primera Instancia] del 31 de julio de 2003 porque éste no se podrá ver afectado por un acuerdo en el cual no participó ni consintió. Por lo tanto, dejamos sin efecto la celebración de una vista evidenciaria[…] César Cruz Roche v. Janet de Jesús Colón, KLAN2009-00567.

Insatisfecha con dicha determinación, la señora De Jesús Colón acude ante nos. Plantea que el Tribunal de Apelaciones erró al considerar su compensación económica al amparo de la Ley Núm. 100 como una de carácter ganancial y al exigirle el consentimiento de su ex cónyuge para llegar a un acuerdo transaccional que redujo la cuantía de la sentencia emitida por el Tribunal de Primera Instancia

Evaluada su argumentación, emitimos una orden al señor Cruz Roche para que mostrara causa por la cual no debíamos revocar la sentencia del foro apelativo intermedio. Con el beneficio de su comparecencia, procedemos a resolver.

II.

A.

La Ley Núm. 100 fue diseñada por el legislador con el objetivo principal de proteger a los empleados de la

empresa privada contra todo tipo de discrimen. Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486, 508 (1990). Este Tribunal ha expresado que esa protección que persigue la Ley Núm. 100 es de carácter personalísimo; es decir, protege y beneficia únicamente al empleado discriminado y no a su progenie o a sus familiares cercanos. Véase Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1 (1994). Lo anterior se debe a que el referido estatuto es de índole laboral y "su objeto estricto es la relación obrero patronal". Santini Rivera v. Serv. Air, Inc., *supra*, pág. 5.

Hemos sido enfáticos en que la Ley Núm. 100 "no tiene, pues, nada que ver con terceros u otras personas que no sean empleados". *Íd*. En suma, es derecho firmemente establecido que la Ley Núm. 100 no es el vehículo procesal para que parientes de un empleado discriminado acudan a los tribunales en busca de resarcimiento de daños.

No obstante lo anterior, una compensación judicial otorgada a un empleado al amparo de la Ley Núm. 100 sí podría contener porciones que se reputan gananciales, pues pueden estar incluidas partidas por salarios dejados de devengar durante la vigencia de un matrimonio. Véase Maldonado v. Banco Central Corp., 138 D.P.R. 268 (1995). Cabe recordar que el Art. 1307 del Código Civil dispone que "se reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o a la mujer". 31 L.P.R.A. sec. 3647.

A tales efectos, en Maldonado v. Banco Central Corp., *supra*, págs. 272-273, manifestamos que "dicha compensación

por ingresos dejados de percibir es parte y goza del mismo carácter de gananciabilidad que le hemos adjudicado al lucro cesante", que es nada menos que ingresos dejados de percibir. Allí dijimos que, "al instar su acción bajo la Ley Núm. 100 (de carácter especial protector), un empleado casado implícitamente reclama en representación de su sociedad de gananciales las partidas que a ésta corresponden". *Íd.* Más aún, declaramos entonces que "el hecho de que una concesión de dinero por concepto de lucro cesante se obtenga dentro de un pleito fundado en la Ley Núm. 100 no altera el carácter ganancial de dicha partida". *Íd.*

Por ende, coexisten dos hechos. Por una parte, la Ley Núm. 100 es de carácter personalísimo y busca la protección del empleado discriminado, excluyendo a familiares y terceros. Y, por otra parte, hay una porción de la compensación proveniente de la Ley Núm. 100 que, por sustituir salarios dejados de devengar, se considera lucro cesante y se reputa ganancial.

### B.

Establecido lo anterior, debemos considerar qué tipo de relación económica había entre los litigantes al momento de dictarse la sentencia original del Tribunal de Primera Instancia, cuando ya se había disuelto el matrimonio. Luego, debemos resolver si esta relación entre ambos obligaba a la señora De Jesús Colón a co-administrar su compensación económica producto de la Ley Núm. 100.

El Art. 1315 del Código Civil establece que la sociedad de gananciales concluye al disolverse el matrimonio mediante, entre otros, un divorcio final y firme. 31 L.P.R.A. sec. 3681. Véase también García López v. Méndez García, 102 D.P.R. 383, 395 (1974). El Art. 105 del Código Civil, por su parte, preceptúa que el divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges. 31 L.P.R.A. sec. 381.

Como es sabido, cuando culmina una sociedad de bienes gananciales mediante la disolución del matrimonio, "surge una comunidad de bienes entre los cónyuges que se rige, a falta de contratos o disposiciones especiales, por las normas de dicha figura jurídica". Calvo Mangas v. Aragonés Jiménez, 115 D.P.R. 219, 228 (1984). De esta forma, la figura de la comunidad de bienes post ganancial está gobernada por los Arts. 326 al 349 del Código Civil, 31 L.P.R.A. secs. 1271-1285. Específicamente, el Art. 328 del Código Civil establece que cada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad, ni impida a los copartícipes utilizarlas según su derecho. 31 L.P.R.A. sec. 1273.

De igual manera, este Tribunal ha resuelto que durante la existencia de la comunidad de bienes, ninguno de los ex cónyuges puede tener el monopolio de ella. Soto López v. Colón, 143 D.P.R. 282, 289 (1997). No hay que demostrar necesidad de tipo alguno para que un comunero ex cónyuge

reclame su participación en la administración y disfrute de los bienes. *Íd,* pág. 288. En <u>Soto López v. Colón</u>, *supra,* también resolvimos, citando a Puig Brutau, que el uso de la cosa en común no puede efectuarse en perjuicio de los demás condueños.

El Art. 332 del Código Civil expone cómo se debe administrar la comunidad de bienes surgida entre dos ex cónyuges. 31 L.P.R.A. sec. 1277. Al respecto, sostiene:

> Para la administración y mejor disfrute de la cosa común serán obligatorios los acuerdos de la mayoría de los partícipes. No habrá mayoría sino cuando el acuerdo esté tomado por los partícipes que representen la mayor cantidad de los intereses que constituyan el objeto de la comunidad. Si no resultare mayoría, o el acuerdo de éste fuera gravemente perjudicial a los interesados de la cosa común, el Tribunal Superior proveerá, a instancia de parte, lo que corresponda, incluso nombrar un administrador. *Íd.*

### C.

Por último, debemos evaluar en qué momento una sentencia o dictamen judicial es final y firme para convertirse en dispositiva de un caso. De esta manera, podremos atisbar la fecha precisa en que surgió la responsabilidad de dividir en partes iguales la compensación ganancial recibida por un ex cónyuge.

Un dictamen judicial es final cuando se archiva en autos la notificación y se registra la sentencia, pero se convierte en firme una vez haya transcurrido el término para pedir reconsideración o apelar sin que esto se haya hecho. R. Hernández Colón, <u>Derecho Procesal Civil</u>, 5ta. Ed., Lexis Nexis, 2010, Puerto Rico, págs. 378-379.

Hace más de medio siglo explicamos que una sentencia es final o definitiva "cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en tal forma que no queda pendiente nada más que la ejecución de la sentencia". Dalmau v. Quiñones, 78 D.P.R. 551, 556 (1955). Véanse, además, Cortés Román v. E.L.A., 106 D.P.R. 504, 509 (1977); Camagleo v. Dorado Wings, Inc., 118 D.P.R. 20, 26 (1986); Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642 (1987). Lo anterior no significa, sin embargo, que se trate necesariamente de una sentencia inapelable. Véase Johnson & Johnson Inc. v. Mun. de San Juan, 172 D.P.R. 840 (2007).

Específicamente, una sentencia es final **y** firme cuando todas las cuestiones contenciosas entre los litigantes han sido dispuestas y no cabe recurso de apelación alguno. Véase Suárez Morales v. E.L.A., 162 D.P.R. 43 (2004). No obstante, durante el término provisto para acudir en revisión o apelación, la misma aún no será firme.

III.

Con estos preceptos en mente, pasemos a resolver la controversia de autos en sus méritos. En este caso, surgió una comunidad de bienes cuando se disolvió por divorcio el matrimonio regido por la sociedad de bienes gananciales. En dicha comunidad figuraban las partidas de una compensación económica a favor de una de las comuneras por motivo de los salarios que dejó de devengar durante la vigencia del matrimonio, salarios que, como vimos, se reputan gananciales.

Además, es evidente que hubo un acto dispositivo por parte de la señora De Jesús Colón al transigir con su antiguo patrono una suma ganancial sin el consentimiento del otro comunero, su ex cónyuge Cruz Roche. Sin embargo, la señora De Jesús Colón negoció partidas económicas provenientes de una causa de acción personalísima que provee la Ley Núm. 100 en beneficio exclusivo de empleadas discriminadas como ella.

A la luz de lo anterior, debemos conciliar, por un lado, que las protecciones otorgadas por la Ley Núm. 100 son personalísimas a favor del empleado discriminado y, por otro lado, que tanto el Código Civil como nuestra jurisprudencia especifican que una comunidad de bienes que surge tras la disolución de una sociedad de bienes gananciales debe ser administrada conjuntamente por ambos cónyuges. En este caso, lo anterior se reduce a contestar si una mujer compensada económicamente por la Ley Núm. 100 – que incluye partidas gananciales del salario dejado de devengar – debía buscar el aval de su ex cónyuge, coadministrador de la comunidad de bienes surgida entre ellos, para modificar la cantidad que le había sido otorgada, o si bastaba su decisión para alcanzar un acuerdo con su antiguo patrono.

Hoy resolvemos que, aunque haya una partida ganancial en la cifra global concedida como compensación al amparo de la Ley Núm. 100, la causa de acción continúa siendo personalísima mientras no haya una sentencia final y firme que sea dispositiva del pleito. Es decir, incoar la demanda

por discrimen en el empleo, litigar el caso, apelarlo o transarlo son todas acciones derivadas de una prerrogativa que pertenece única y exclusivamente al empleado afectado. Como tal, es el empleado demandante quien único tiene legitimación para hacer con su causa de acción al amparo de Ley Núm. 100 lo que él o ella entienda que le resultará más conveniente. Esto porque la letra clara de la ley, la intención del legislador y la jurisprudencia interpretativa de la Ley Núm. 100 sostienen que el referido estatuto se diseñó con el propósito de cobijar a los empleados discriminados, no a sus familiares o parientes. Santini Rivera v. Serv. Air, Inc., *supra*.

Ahora bien, es innegable que muchas causas de acción instadas bajo la Ley Núm. 100 – como en este caso – contendrán partidas que, por ser producto del lucro cesante, se reputarán gananciales. Maldonado v. Banco Central Corp., *supra*. Estas partidas, pues, tendrán que ser dividas correspondientemente, pero sólo después de que el propietario de la causa de acción – el empleado afectado – haya decidido cómo litigar, transar o disponer de su caso que, después de todo, le pertenece exclusivamente. El empleado discriminado es dueño y señor (o señora) de su caso. Hasta que el caso concluya, no hay porción alguna – ni tan siquiera la ganancial – sobre la cual el cónyuge o ex cónyuge pueda tener una participación líquida y exigible.

En el presente caso, si bien es cierto que el Tribunal de Primera Instancia emitió una sentencia otorgando cierta

compensación económica al amparo de la Ley Núm. 100 a favor de la señora De Jesús Colón, ésta nunca fue firme, pues el período para acudir en apelación nunca expiró. Por el contrario, el patrono demandado apeló dicha sentencia y, posteriormente, negoció con la señora De Jesús Colón. Esto último condujo a un acuerdo transaccional que, una vez aceptado por el Tribunal de Primera Instancia en enero de 2005, fue lo que dispuso del caso hasta éste convertirse en final (pues terminó todas las controversias entre los litigantes y se archivó la orden a esos efectos en autos) y firme (pues ya no era posible apelar el dictamen). Es decir, el caso que enfrentó a la señora De Jesús Colón con su antiguo patrono nunca fue final y firme hasta el momento en que el foro de instancia acogió el acuerdo alcanzado entre las partes, lo archivó en autos y expiró el tiempo dispuesto por ley para apelar. A partir de ese momento, y sólo a partir de ahí, es que surgió la posibilidad de que el ex cónyuge, el señor Cruz Roche, reclamara su participación en la porción ganancial de la compensación otorgada a la señora De Jesús Colón.

Así, quien posea una causa de acción al amparo de la Ley Núm. 100 no tiene que contar con el aval de su cónyuge (en caso de haber una sociedad de bienes gananciales) o ex cónyuge (si hay una comunidad de bienes post ganancial ya disuelto el matrimonio) para tomar decisiones que afecten la referida causa de acción, pues ésta le pertenece al empleado exclusivamente. El ex cónyuge que reclame parte de la porción ganancial de la compensación económica recibida

por el empleado bajo la Ley Núm. 100 sólo podrá participar del monto que quede una vez el empleado titular de la acción haya dispuesto de su caso como mejor él o ella entendiera.

Del mismo modo que un empleado tiene la potestad de procurar un trabajo que lo remunere en mayor o menor grado, así también un empleado discriminado posee la prerrogativa de incoar o no una demanda, litigarla de una u otra forma o de transar el caso. El control en uno u otro supuesto lo tiene el empleado, aunque sin duda en ambas instancias sus acciones repercutirán sobre los ingresos que recibirá la sociedad de bienes gananciales que posiblemente integra.

## IV.

Por todo lo anterior, se expide el auto solicitado, se revoca la sentencia del Tribunal de Apelaciones emitida en reconsideración y se devuelven los procedimientos al Tribunal de Primera Instancia para que éste determine, acorde con lo aquí dispuesto, cuál fue la cantidad final recibida por la señora De Jesús Colón producto del acuerdo con su antiguo patrono y qué porción se reputará ganancial. Una vez determinado lo anterior, se ordenará la división por partes iguales de la porción ganancial del acuerdo alcanzado entre la señora De Jesús Colón y Whitehall-Robins Laboratories.

Para hacer la división correspondiente, el Tribunal de Primera Instancia debe tomar varios pasos. En primer lugar, debe determinar qué porción se le otorgó a la señora De Jesús Colón como compensación por lucro cesante. En segundo

lugar, debe decidir qué cantidad de esa porción se habría devengado durante la vigencia del matrimonio. Será esa cantidad la que se repute ganancial. Una vez determinado ese monto ganancial, el Tribunal ordenará que dicha cantidad ganancial se divida en partes iguales entre ambos litigantes. Para la división, no se debe usar la figura duplicada de lucro cesante que provee la Ley Núm. 100 como penalidad contra el patrono discriminante, sino el monto simple que es el que en realidad hubiera devengado como salario durante la vigencia del matrimonio.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

César Cruz Roche

    Recurrido

       v.                   CC-2010-191      Certiorari

Janet de Jesús Colón y Otros

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 23 de junio de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se expide el auto solicitado, se revoca la sentencia del Tribunal de Apelaciones emitida en reconsideración y se devuelven los procedimientos al Tribunal de Primera Instancia para que éste determine, acorde con lo aquí dispuesto, cuál fue la cantidad final recibida por la señora De Jesús Colón producto del acuerdo con su antiguo patrono y qué porción se reputará ganancial. Una vez determinado lo anterior, se ordenará la división por partes iguales de la porción ganancial del acuerdo alcanzado entre la señora De Jesús Colón y Whitehall-Robins Laboratories.

Para hacer la división correspondiente, el Tribunal de Primera Instancia debe tomar varios pasos. En primer lugar, debe determinar qué porción se le otorgó a la señora De Jesús Colón como compensación por lucro cesante. En segundo lugar, debe decidir qué cantidad de esa porción se habría devengado durante la vigencia del matrimonio. Será esa cantidad la que se repute ganancial. Una vez determinado ese monto ganancial, el Tribunal ordenará que dicha cantidad ganancial se divida en partes iguales

entre ambos litigantes. Para la división, no se debe usar la figura duplicada de lucro cesante que provee la Ley Núm. 100 como penalidad contra el patrono discriminante, sino el monto simple que es el que en realidad hubiera devengado como salario durante la vigencia del matrimonio.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo