EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Francisco Y. Díaz Rodríguez<br><br>Recurrido<br><br>v.<br><br>Glorivette García Neris<br><br>Peticionaria | Certiorari<br><br>2022 TSPR 12<br><br>208 DPR ____ |

Número del Caso:  CC-2020-35

Fecha: 26 de enero de 2022

Tribunal de Apelaciones:

    Panel VI

Abogado de la parte peticionaria:

    Lcdo. Juan C. Martín Meléndez

Abogado de la parte recurrida:

    Lcdo. Jesús Roberto Ramos-Puca

Materia: Derecho de Familia – Corrección de los foros inferiores al utilizar las *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico*, para determinar la proporción en que debe dividirse y adjudicarse el producto de la venta del inmueble.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Francisco Y. Díaz Rodríguez<br><br>Recurrido<br><br>v.<br><br>Glorivette García Neris<br><br>Peticionaria | CC-2020-0035 | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 26 de enero de 2022.

Hoy nos enfrentamos a una disputa sobre la liquidación del único bien de la comunidad postganancial formada por las partes: la vivienda familiar. Aunque la división de los demás bienes y deudas gananciales fue atendida mediante las estipulaciones correspondientes en el procedimiento de divorcio por consentimiento mutuo, los excónyuges pactaron prolongar la indivisión de este inmueble para que la excónyuge custodia y sus hijas continuaran residiendo en ella hasta que las menores advinieran a la mayoridad.

En vista de que pesaba un gravamen hipotecario sobre el inmueble, las partes estipularon que la totalidad de la pensión alimentaria sería dirigida al pago de la hipoteca y que el excónyuge no custodio haría el pago directamente a la entidad bancaria. Por otro lado, la excónyuge custodia costearía el resto de las necesidades de las menores. Años

más tarde, y llegado el momento de liquidar la comunidad, las partes discrepan sobre su contribución directa o indirecta a la propiedad. Por lo tanto, luego de examinar la relación entre el derecho de alimentos, la comunidad postganancial y las estipulaciones, por primera vez nos expresamos sobre la corrección de los foros inferiores al utilizar las *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico,* infra, para determinar la proporción en que debe dividirse y adjudicarse el producto de la venta del inmueble.

## I

El Sr. Francisco Y. Díaz Rodríguez (recurrido) y la Sra. Glorivette García Neris (peticionaria) adquirieron durante su matrimonio varios bienes gananciales, entre ellos, una vivienda familiar en el Municipio de Patillas. Así las cosas, el 26 de junio de 2002 constituyeron una hipoteca sobre la propiedad por $64,000.00 con un pago mensual de $553.00.[1] Meses más tarde, el matrimonio se disolvió por la causal de consentimiento mutuo.

En la Sentencia de divorcio las partes incorporaron una serie de estipulaciones con relación a la pensión alimentaria a favor de sus dos hijas menores de edad, así como sobre los bienes y las deudas gananciales. Cabe señalar, que solo la vivienda quedó sin liquidar con un balance del principal de $59,608.00.

---

[1] El valor de tasación de la propiedad era de $64,000.00 al momento de constituir la hipoteca. Apéndice del *Alegato del Recurrido*, pág. 25.

Específicamente, las partes estipularon:

"PENSIÓN ALIMENTICIA

    A. El padre alimentante proveerá una pensión alimentaria regular por la cantidad de $453.00 mensuales. La misma continuará siendo provista mediante el pago de la hipoteca de naturaleza ganancial y por la cantidad de $553.00 mensuales que grava la vivienda en que reside la parte alimentista y los menores.

BIENES GANANCIALES
    A. La esposa peticionaria se quedará viviendo en la Casa residencial, ubicada en… Patillas, Puerto Rico.

    B. Al advenir a la mayoridad la menor de las hijas las partes venderán el inmueble y distribuirán la ganancia obtenida, si alguna entre sí, pudiendo entonces las partes reclamar lo que le corresponda, luego de descontadas las aportaciones a pensión alimenticia".

No hay controversia que desde el 2003 la pensión acordada y pagada por el recurrido fue de $453.00 mensuales y que también aportó $100.00 mensuales adicionales para el pago de la hipoteca para un total de $553.00. Por otro lado, la peticionaria asumió el resto de las necesidades de las menores desde esa fecha.

Posteriormente, el recurrido presentó una Demanda para la división de bienes gananciales que fue declarada Con Lugar. Años más tarde, el recurrido solicitó su ejecución. Sin embargo, la ejecución de la Sentencia fue paralizada por el tribunal tras reconocer el derecho a hogar seguro sobre la vivienda en la que todavía residía una hija menor de edad. En el interín, la deuda hipotecaria se saldó el 1 de julio de 2016.

El 22 de febrero de 2019, el recurrido presentó una *Solicitud de autorización para ejecución de sentencia, pago de renta a favor del demandante y orden para que se consigne en el Tribunal*. En esta informó que su hija advino a la mayoría de edad y que había sido relevado del pago de la pensión alimentaria a su favor. Por lo tanto, solicitó que se le adjudicara su participación en el inmueble.

Durante el procedimiento de ejecución de Sentencia la propiedad fue tasada por $70,000.00. El recurrido sostuvo que "a la [peticionaria] le corresponde $26,750.00 y al [recurrido] le corresponde la cantidad de $43,250.00."[2] En esencia, solicitó que se descontara el exceso del pago a su favor y se distribuyera el restante en partes iguales. Indicó que ambas partes cumplieron con su obligación alimentaria (el recurrido mediante el pago de la pensión alimentaria y la peticionaria al asumir el resto de las necesidades de las menores) por lo que no existía crédito para ninguna de las partes con relación al pago hipotecario de $453.00 mensuales.

Por otro lado, la peticionaria sostuvo que el recurrido contaba con una participación total de $20,117.93 en el valor de la residencia. En esta suma incluyó $16,200.00 por la aportación de $100.00 mensuales, $2,196.00 del principal pagado durante la vigencia de la sociedad legal de gananciales y $1,722.00 al aplicar una

---

[2] Resolución de 2 de octubre de 2019, pág. 5. Por otro lado, el recurrido posteriormente sostuvo en su Alegato ante este Tribunal que "a la peticionaria le corresponden $24,941.03 y al recurrido le corresponde la cantidad de $45,058.96". Alegato, pág. 18.

participación de 28.7% de incremento en valor de la propiedad.[3] Sostuvo que el pago hipotecario de $453.00 mensuales debía ser reconocido como uno realizado por la peticionaria, pues el pago mensual del recurrido solo se debía adjudicar a la pensión alimentaria. Añadió que como persona custodia, y en su facultad de administradora, escogió que la totalidad de la pensión fuera dirigida al pago de la residencia.

Finalmente, el Tribunal de Primera Instancia le adjudicó al recurrido una participación de $30,869.00 y a la peticionaria de $39,131.00. Para este resultado consideró el crédito de $100.00 mensuales para un total de $16,200.00 reconocido por las partes a favor del recurrido. En cuanto al pago restante de la hipoteca por la suma de $453.00 dividió está cantidad entre los tres Ocupantes de la vivienda utilizando el Art. 20(1)(d) de las *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico,* Reglamento Núm. 8529 del 30 de octubre de 2014, según enmendado(Guías).[4] De esta forma concluyó que

---

[3] Ante el Tribunal de Primera Instancia la peticionaria específicamente indicó que: "[s]i computamos cual es el porciento que tendría el demandante en la residencia o sea $16,200.00 aportados más los $2,195.93 de equity es igual a $18,395.93 dividido entre $64,000.00 (costo original de la residencia). Sería un 28.7% que tiene el demandante en la residencia. Al aplicar dicho 28.7% por el incremento en valor según la tasación de $6,000.00 ($70,000.00 menos $64,000.00) $6,000.00 por 28.7% daría un resultado de $1,722.00. Por tanto si sumamos los $18,395.93 más los $1,722.00 de incremento en valor daría un total de $20,117.93 que realmente es lo que el demanda[nte] tendría en la residencia objeto de este pleito y es lo que estaríamos dispuestos a ofrecer". Moción en Cumplimiento de Orden de 10 de julio de 2019, pág. 2. A nivel apelativo, la peticionaria modificó sus cómputos e indicó que el recurrido tenía derecho a una participación total de $14,037.00.

[4] En lo pertinente, el Artículo 20(1)(d) de las *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico,* Reglamento Núm. 8529 de 30 de octubre de 2014, según enmendado (Guías), expresa que:

$151.00 mensuales (para un total de $24,462.00) correspondían ser bonificados a la mensualidad que aportaba la peticionaria en cuanto a sí misma, ya que la aportación en cuanto a sus dos hijas correspondía a ambas partes. Luego de los respectivos créditos, el tribunal dividió en partes iguales los restantes $29,338.00, otorgándole a cada uno una participación de $14,669.00.

### Participación adjudicada a la peticionaria

| | |
|---|---|
| Crédito reconocido por una tercera parte de la ocupación de la vivienda conforme a las Guías | $24,462.00 |
| 50% de las dos terceras partes de la ocupación de la vivienda al utilizar las Guías | $14,669.00 |
| Participación total adjudicada a la peticionaria | $39,131.00 |

### Participación adjudicada al recurrido

| | |
|---|---|
| Crédito de $100.00 mensuales por 13.5 años. ($100.00 x 12 x 13.5) | $16,200.00 |
| 50% de las dos terceras partes de la ocupación de la vivienda al utilizar las Guías | $14,669.00 |
| Participación total adjudicada al recurrido | $30,869.00 |

---

"Vivienda: Se toma en consideración la cantidad mensual que, en efecto, la persona custodia paga o tiene que pagar por concepto de renta o hipoteca de la vivienda en la cual residen los alimentistas, o cualquier cantidad que la persona custodia aporta o tiene que aportar por la vivienda en la que residen estos o estas. La cantidad mensual se divide por el número de personas que residen en la vivienda para obtener una cantidad per cápita que se multiplica por el número de alimentistas para los o las cuales se está computando la pensión alimentaria. El resultado es la cuantía por la cual la persona custodia y la no custodia deberán responder proporcionalmente.

El concepto de vivienda incluye las cuotas de mantenimiento, pero, excluye los gastos relacionados con los servicios públicos o utilidades, el mantenimiento rutinario de la residencia para el uso y disfrute, mejoras, reparaciones, compra de mobiliario, derramas o cualquier otro gasto que no sea recurrente ni periódico".

Inconforme, la peticionaria recurrió ante el Tribunal de Apelaciones y señaló como error que la aplicación de las Guías tuvo el efecto de otorgarle al recurrido una participación indebida de $14,669.00. En vista de que el Tribunal de Apelaciones denegó la expedición del auto, la peticionaria acudió ante nos y señaló que:

> Erró el Honorable Tribunal al aplicar las Guías para Determinar las Pensiones en el proceso de liquidación de bienes gananciales, lo que resultó en un crédito para el alimentante contra las pensiones pagadas a sus niñas, las cuales fueron aplicadas al pago de la deuda hipotecaria ganancial, lo que constituye una exoneración parcial de la pensión fijada.

La peticionaria sostiene que el recurrido estipuló pagar el importe de $453.00 por concepto de pensión alimentaria a través del pago directo de la deuda hipotecaria, y que además estipuló reclamar lo que le correspondía "luego de descontadas las aportaciones a pensión alimentaria". Por lo tanto, indica que el crédito al que tiene derecho se limita a los $100.00 aportados mensualmente, al *equity* y al incremento de valor de la propiedad. *A contrario sensu*, sostiene que conceder una participación sobre el pago de $453.00 conllevaría la adjudicación de un crédito contra las pensiones alimentarias pagadas a sus dos (2) hijas menores y que eran para cubrir sus necesidades indispensables. En vista de que al hacer el pago de la pensión ese importe dejó de pertenecerle al alimentante, indica que debe considerarse que la madre custodia aportó

$453.00 mensuales al pago hipotecario y no $151.00 como determinó el foro primario al aplicar las Guías.

Por su parte, el recurrido sostuvo que a la peticionaria tampoco se le puede adjudicar los $453.00 de pensión como crédito a su favor en cuanto a la liquidación del bien ganancial. Indicó que no se debe fijar la proporción del pago de hipoteca en términos de la pensión alimentaria, sino que para derribar la presunción de igual participación en la comunidad de bienes, le corresponde a la parte que reclama un crédito probarlo. Así, expresa que la peticionaria "no probó crédito alguno a su favor y como cuestión de realidad no pagó un centavo de la hipoteca".[5]

Atendido el recurso, el 6 de marzo de 2020 expedimos el auto solicitado. Contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de resolver.

II

La sociedad legal de gananciales es el régimen matrimonial que reconoce la titularidad conjunta y sin especial atribución de cuotas de todos los bienes del matrimonio, así como sobre las deudas y obligaciones que fueron asumidas por cualquiera de los cónyuges durante el mismo. 31 LPRA ant. secs. 3647 y 3661. *Roselló Puig v. Rodríguez Cruz*, 183 DPR 81, 93 (2011). Sin embargo, la disolución del matrimonio por divorcio conlleva la ruptura completa del vínculo matrimonial y la separación de estos

---

[5] Alegato, pág. 14.

bienes. 31 LPRA ant. sec. 381. Véase además, *Cruz Roche v. Colón y otros*, 182 DPR 313, 322 (2011); *Montalván v. Rodríguez*, 161 DPR 411 (2004). Es entonces que surge entre los excónyuges una comunidad ordinaria compuesta por todos los bienes que eran gananciales y en la que ambos participan por partes iguales mediante cuotas independientes, alienables y homogéneas.[6] *Betancourt González v. Pastrana Santiago*, 200 DPR 169 (2018); *BL Investment Inc. v. Registrador*, 181 DPR 5, 15 (2011), *Montalvan v. Rodríguez*, supra.

La comunidad de bienes postganancial está gobernada, **a falta de contrato o disposiciones especiales**, por las normas establecidas en los Arts. 326 al 340 del Código Civil, 31 LPRA ant. secs. 1271-1285.[7] *Montalván v. Rodríguez*, supra, págs. 421-422; *Metropolitan Marble Corp. v. Pichardo*, 145 DPR 607 (1998); *Calvo Mangas v. Aragonés Jiménez*, 115 DPR 219 (1984). Esta comunidad existe indefinidamente hasta que se liquide la cosa común a solicitud de cualquiera de las partes. Sin embargo, cuando no es liquidada simultáneamente en el divorcio, adviene un periodo en que se mezclan y confunden provisionalmente los bienes de los excónyuges, ya sea porque se producen frutos, se saldan deudas, se obtienen ganancias o se sufren

---

[6] Específicamente el Art. 1295 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 3621, indicaba que los cónyuges "harán suyos por mitad, al disolverse el matrimonio, las ganancias o beneficios obtenidos indistintamente por cualquiera de los cónyuges durante el mismo matrimonio".

[7] El Código Civil de Puerto Rico de 2020 recoge la doctrina y la jurisprudencia sobre la comunidad postganancial en los Arts. 537 al 554, así como las disposiciones relacionadas a la comunidad de bienes en los Arts. 835 *et seq*.

pérdidas y gastos. *Montalván v. Rodríguez*, supra. Así, la presunta igualdad de cuotas está sujeta a ser rebatida por prueba pertinente. Art. 327 del Código Civil, 31 LPRA ant. sec. 1272. En estos casos, se debe "examinar si el aumento o disminución del valor del patrimonio al momento de la liquidación responde al mero pasar del tiempo o a la gestión exclusiva de uno de los cónyuges, puesto que, de rebatirse la presunción de equivalencia de cuotas, el aumento en valor del bien o en la producción de frutos se dividirá conforme al trabajo y gestión de cada excónyuge. *BL Investments Inc. v. Registrador*, 181 DPR 5, 13 esc. 6 (2011); *Betancourt González v. Pastrana Santiago*, supra; *Montalván v. Rodríguez*, supra, pág. 427.

Discutida la normativa aplicable a la comunidad postganancial, examinemos el derecho de los menores a recibir alimentos.

## III

En nuestra jurisdicción, los menores tienen un derecho fundamental a recibir alimentos que emana de la cláusula constitucional del derecho a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico. *De León Ramos v. Navarro Acevedo*, 195 DPR 157 (2016). Por ello, estos casos están revestidos del más alto interés público, siendo el interés principal el bienestar del menor. *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 559 (2012), *Toro Sotomayor v. Colón Cruz*, 176 DPR 528 (2009); *Argüello v. Argüello*, 155 DPR 62, 70 (2001). *Figueroa*

*Robledo v. Rivera Rosa*, 149 DPR 565 (1999). Así, el derecho a alimentos incluye todo lo indispensable para el sustento del menor, habitación, vestido, asistencia médica y educación, según la posición social de la familia.  Art. 142 del Código Civil, 31 LPRA ant. sec. 561.

La obligación de alimentar al menor es inherente a la maternidad y la paternidad por lo que recae sobre los obligados desde el momento en que la relación filial queda establecida legalmente, independientemente de las fuentes de las cuales emana la obligación de alimentar.[8] 31 LPRA ant. sec. 601. Véase, *Santiago, Maisonet v. Maisonet Correa,* supra, págs. 560-561.  Esta obligación es personal de cada uno de los excónyuges por lo que debe ser satisfecha del propio peculio y de forma proporcional a sus recursos y a la necesidad del menor una vez decretado el divorcio. *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019); *Figueroa Robledo v. Rivera Rosa*, supra. En cuanto a la contribución proporcional entre los obligados, también se considera la labor que la persona custodia realiza en el hogar como parte del descargo de su propia obligación de alimentar, *inter alia*, cuando administra la pensión que el alimentante aporta. *Santiago, Maisonet v. Maisonet Correa,* supra, pág. 562; *Mundo v. Cervoni*, 115 DPR 422 (1984).

---

[8] Véase, Arts. 143 y 153 del Código Civil, 31 LPRA ant. secs. 562(2) y 601; Art. 3 de la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como Ley Orgánica de la Administración para el Sustento de Menores, 8 LPRA sec. 502, *et seq*. Véase además, *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 560-561 (2012).

Sin embargo, en aras de lograr que los obligados contribuyan a la manutención de los menores dependientes, se aprobó la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como Ley Orgánica de la Administración para el Sustento de Menores, 8 LPRA sec. 502 *et seq.* [9] También se adoptaron las *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico, supra,* para fomentar la uniformidad del principio de proporcionalidad. *Santiago, Maisonet v. Maisonet Correa,* supra, págs. 562-563. Los mecanismos que esta normativa establece tienen una naturaleza inherentemente forzosa, pues van dirigidos principalmente a quienes no responden con sus obligaciones alimentarias o para lograr adjudicar pensiones cuando existe una disputa sobre la cantidad que los obligados deben aportar. *De León Ramos v. Navarro Acevedo*, supra, pág. 176.

Así, a través de un descubrimiento de prueba amplio y compulsorio sobre la situación económica de las partes, las Guías permiten establecer de manera uniforme y equitativa la aportación monetaria de cada parte mediante criterios numéricos y descriptivos que toman en consideración los ingresos de los obligados y las necesidades de los menores. *De León Ramos v. Navarro Acevedo*, supra, pág. 170, *Santiago, Maisonet v. Maisonet Correa,* supra, pág. 564.

---

[9] Para una exposición detallada del principio de proporcionalidad en las pensiones alimentarias y las *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico,* Reglamento Núm. 8529 del 30 de octubre de 2014, según enmendado (Guías), véase, *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019); *De León Ramos v. Navarro Acevedo*, 195 DPR 157 (2016), *Santiago, Maisonet v. Maisonet Correa*, supra, págs. 562-564.

Empero, hay casos particulares en los que hemos reconocido la inaplicabilidad de las Guías para el cómputo de las pensiones alimentarias. Específicamente, el alimentante no tiene que descubrir prueba de su situación económica cuando acepta su capacidad para pagar la totalidad de la pensión alimentaria que supla las necesidades del menor. Sin ese descubrimiento, las Guías son innecesarias e inaplicables. Por lo tanto, en esos casos solo resta determinar la suma justa y razonable a ser impuesta como pensión. Por ello, la "pensión alimentaria se fijará de acuerdo con los preceptos del Código Civil contenidos en los Arts. 153, 146 y 142, *supra*, y tomando en consideración la condición económica y el estilo de vida del alimentante, en unión a las necesidades de los alimentistas, incluyendo en estas el estilo de vida al cual estaban acostumbrados". *Santiago, Maisonet v. Maisonet Correa,* supra, pág. 566, citando a *Chévere Mouriño v. Levis Goldstein,* 152 DPR 492 (2000).

Hacemos hincapié en que aunque los derechos de la patria potestad facultan a la persona custodia para reclamar el pago de las pensiones a nombre de sus hijos, el menor es el acreedor de la pensión alimentaria que finalmente se otorgue o acuerde. *Toro Sotomayor v. Colón Cruz*, supra; *Figueroa Robledo v. Rivera Rosa*, supra.

Aclarado lo anterior, examinemos los efectos de las estipulaciones alcanzadas en los divorcios por consentimiento mutuo tanto en las divisiones de bienes

gananciales como en la determinación de las pensiones alimentarias.

IV

Los divorcios por la causal de consentimiento mutuo deben tramitarse mediante una petición conjunta acompañada por las estipulaciones correspondientes a la división de los bienes, el sustento de las partes y otras consecuencias del divorcio, tales como los alimentos de los hijos menores. *Igaravidez v. Ricci*, 147 DPR 1 (1998); *Negrón Rivera y Bonilla*, *Ex parte*, 120 DPR 61, 72 (1987); *Figueroa Ferrer v. ELA*, 107 DPR 250, 277 (1978). Así, la estipulación finalmente suscrita por las partes y aceptada por el tribunal constituye un contrato de transacción judicial que los obliga, pues pone fin a una acción e incorpora unos acuerdos al proceso judicial en curso. *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 204 (2006); *Igaravidez v. Ricci*, supra, pág. 7; *Magee v. Alberro*, 126 DPR 228, 232 (1990); *Negrón Rivera y Bonilla*, *Ex parte*, supra, pág. 74. El propósito de estipular lo relativo a la división de bienes es que "una vez decretado el divorcio, las partes no tengan que enfrentarse de nuevo a dilucidar aspectos de la liquidación del régimen económico que puedan traer hostilidades y desavenencias entre" las partes. *Igaravidez v. Ricci*, supra, pág. 7 esc. 2.

Como regla general, el Tribunal aceptará los convenios y las estipulaciones a las que lleguen las partes para finalizar el pleito y, el acuerdo tendrá el efecto de cosa

juzgada entre las partes. *Igaravidez v. Ricci*, supra; *Magee v. Alberro*, supra. Sin embargo, "la autonomía de la voluntad de los contratantes no es irrestricta, pues '[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público'" *Vivoni Farage v. Ortiz Carro*, 179 DPR 990, 1002 (2010), citando el Art. 1207 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 3372. En vista de ello, el tribunal no está obligado a aprobar la estipulación que se le someta en un divorcio por consentimiento mutuo, pues debe cerciorarse de que no es producto de la irreflexión o de la coacción. *McConnell v. Palau*, 161 DPR 734 (2004); *Negrón Rivera y Bonilla, Ex parte*, supra, pág. 72; *Figueroa Ferrer v. ELA*, supra, pág. 276.

Ya aceptado el acuerdo, el juzgador puede interpretar su extensión y aplicación al pleito judicial. *Rivera Rodríguez v. Rivera Reyes*, supra, pág. 205, *Igaravidez v. Rici*, supra. Para ello, son de aplicación las reglas generales sobre la interpretación de contratos, en lo que no sean incompatibles con las normas que regulan los contratos de transacción. *Negrón Rivera y Bonilla, Ex parte*, supra, pág. 74. Así, el Art. 1233 del Código Civil, 31 LPRA ant. sec. 3471, establece que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.

Sin embargo, el examen de las estipulaciones por el tribunal cobra mayor relevancia cuando se relaciona con la pensión de un menor. En ese caso el Tribunal debe asegurarse que el convenio no es dañino para el menor porque satisface adecuadamente sus necesidades, así como que el alimentante tiene medios económicos suficientes para cumplir.[10] *Negrón Rivera y Bonilla*, *Ex parte*, supra, pág. 76. Véase además, *Guías para uniformar el procedimiento de divorcio por consentimiento mutuo,* Conferencia Judicial de Puerto Rico, mayo 1988, pág. 32. Es más, a diferencia de otras estipulaciones a las que lleguen las partes, los acuerdos de alimentos no constituyen cosa juzgada y están sujetos a revisión. *Pesquera Fuentes v. Colón Molina*, supra; *McConnell v. Palau*, supra. Por ello, la pensión alimentaria (acordada por las partes y aceptada por el tribunal mediante estipulación) puede ser alterada cuando existe un cambio sustancial en las circunstancias que originaron el convenio. *Negrón Rivera y Bonilla*, *Ex parte*, supra.

V

Durante el procedimiento de divorcio las partes liquidaron todos sus bienes con excepción de la vivienda familiar. Esto, pues las partes acordaron permanecer en comunidad con respecto al inmueble hasta que sus hijas

---

[10] El Tribunal de Primera Instancia cuenta con varias herramientas para cumplir con esta encomienda. *Negrón Rivera y Bonilla*, *Ex parte*, supra, págs. 76-77.

advinieran a la mayoría de edad. Asimismo, posteriormente el foro de instancia reconoció el derecho a hogar seguro sobre este.

La vivienda había sido hipotecada por la cantidad $64,000.00 previo al divorcio. Sin embargo, al disolverse el matrimonio quedaba pendiente un balance de $59,608.00 con un pago mensual de $553.00. Conforme a lo estipulado por las partes, el pago de $453.00 por concepto de la pensión alimentaria (correspondiente a la exclusiva obligación del recurrido) se dirigiría al préstamo hipotecario. Además, el recurrido proveería $100.00 adicionales para completar el mismo. Trece años y medio después de decretado el divorcio, la propiedad fue saldada y su valor conforme a una tasación reciente es de $70,000.00. Por lo tanto, el inmueble tuvo un aumento de valor de $6,000.00.

Llegado el momento de liquidar la comunidad, las partes discrepan sobre su contribución en cuanto al importe de $453.00 del pago mensual de la hipoteca. En particular, la peticionaria sostiene que el foro primario incidió al aplicar las Guías con el efecto de otorgarle al recurrido un crédito de $14,669.00 contra las pensiones pagadas a sus hijas menores y contrario a las estipulaciones de la sentencia de divorcio. Por otro lado, el recurrido sostiene que no solicita un crédito por pago en exceso a la pensión alimentaria, sino que se aplique la presunción de igual participación en la comunidad de bienes. Por consiguiente,

concluye que a la peticionaria le correspondería probar el crédito que reclama.

No hay controversia entre las partes de que durante la vigencia del matrimonio ambos participaron en igual proporción sobre el bien y sus deudas. Por lo tanto, **la aportación al principal de la sociedad legal de gananciales previo al divorcio corresponde a ambos comuneros en partes iguales.**[11] Sin embargo, debemos examinar la contribución de los comuneros tras el divorcio al balance pendiente de $59,608.00 y su participación en el aumento de valor conforme a los acuerdos logrados por motivo del divorcio.

Tal como expresáramos anteriormente, la comunidad formada por las partes sobre el inmueble se rige en primer lugar por el contrato o las disposiciones especiales aplicables. A falta de estas, se gobierna por las normas establecidas para la comunidad de bienes en el Código Civil. Es decir, aunque las cuotas de la comunidad se presumen equivalentes mientras no se pruebe lo contrario, existe un acuerdo entre las partes sobre la liquidación de todos los bienes gananciales, incluyendo el inmueble en cuestión. Este acuerdo fue aprobado por un tribunal, y por consiguiente, constituye cosa juzgada en cuanto a los bienes. Es al acuerdo al que debemos acudir previo a las

---

[11] La propiedad estaba grabada por una hipoteca de $64,000.00 al que se le resta un balance pendiente de $59,608.00 a la fecha del divorcio, por lo que la sociedad legal de gananciales había aportado $4,391.87 al principal según la tabla de amortización examinada por el Tribunal de Primera Instancia.

disposiciones del Código Civil aplicables a la comunidad de bienes.

El acuerdo atendió varios efectos del divorcio, pero de particular importancia para el caso de autos son las estipulaciones sobre la pensión alimentaria de las menores y la vivienda familiar. En cuanto a la obligación alimentaria, las partes estipularon que el recurrido estaba obligado a pagar $453.00 en concepto de pensión alimentaria de sus dos hijas. A pesar de que los acuerdos sobre alimentos no constituyen cosa juzgada, del expediente no surge ninguna modificación de esta cuantía durante los años siguientes. Por otro lado, las partes reconocieron que la madre cubrió el resto de los gastos de las menores mediante una aportación económica no cuantificada y con su trabajo al atender las necesidades de sus hijas en el hogar.

Tal como hemos expresado en múltiples ocasiones, el derecho a alimentos corresponde al menor y lo hace acreedor de aquellos alimentos que satisfagan lo indispensable para su sustento según los medios y la posición social de los obligados. Una vez decretado el divorcio, esta obligación se materializa en una pensión alimentaria provista por la persona no custodia y en la contribución económica, personal y administrativa de la persona custodia. Aunque nuestro ordenamiento jurídico aspira a que la distribución de esta obligación entre ambos sea equitativa, no podemos perder de vista que la imposición de la obligación de proveer alimentos obedece a distintos factores. Así, la

contribución puede ser determinada por las partes, siempre y cuando no afecte el derecho del menor, o mediante los mecanismos que establece la ley.

En el caso de autos, no cabe duda de que los $453.00 que proveía el recurrido mediante la pensión alimentaria pertenecían a sus hijas menores de edad y que contribuían en cierta proporción a las distintas necesidades de estas. Sin embargo, los tribunales no debemos confundir el propósito de la pensión alimentaria ni a quien pertenece. Tampoco debemos extrapolar que la contribución de los obligados a cada necesidad de los menores es por la misma cantidad de dinero, sino que es en proporción a sus medios. El que el recurrido pagara la pensión alimentaria directamente a la entidad bancaria, no cambia esta premisa. *Figueroa Robledo v. Rivera Rosa*, supra, págs. 575-576.

Por otro lado, el acuerdo establecido en cuanto a los bienes gananciales fue aceptado por el tribunal y tiene efecto de cosa juzgada. En este las partes especificaron que "al advenir a la mayoridad la menor de las hijas las partes venderán el inmueble y distribuirán la ganancia obtenida, si alguna entre sí, **pudiendo entonces las partes reclamar lo que le corresponda, luego de descontadas las aportaciones a pensión alimenticia**". Por lo tanto, solo resta interpretar su extensión y aplicación al caso de autos.

Como hemos expresado, si los términos de un contrato son claros y no dejan duda sobre la intención de los

contratantes, se estará al sentido literal de sus cláusulas. Asimismo, la autonomía de la voluntad de los contratantes está limitada por la ley, la moral y el orden público. Por lo tanto, teniendo presente que la pensión alimentaria pertenece exclusivamente a las menores, concluimos que el texto del acuerdo es claro al requerir descontar las aportaciones a la pensión alimentaria previo a que el excónyuge reclame lo que le corresponde de la ganancia obtenida. El acuerdo específicamente recogía una pensión alimentaria de $453.00 a ser provista por el recurrido. Por lo tanto, esta es la cantidad a ser descontada. Así, el recurrido puede reclamar lo que le corresponde tras descontar la suma provista como pensión alimentaria.

Debemos entonces examinar los créditos que el recurrido sí puede reclamar. En cuanto a esto, no hay controversia de que las partes reconocieron un crédito de $100.00 mensuales a favor del recurrido por los pagos hipotecarios que realizaba conforme a la estipulación y que contribuyeron tanto al pago del principal como a los intereses. **Por lo tanto, corresponde al recurrido la mitad de lo aportado por la sociedad legal de gananciales al principal del préstamo hipotecario antes del divorcio, lo que su aportación de $100.00 mensuales contribuyó al principal del préstamo hipotecario luego de decretado el divorcio, así como, una participación proporcional en el aumento de valor de $6,000.00.**

Por otro lado, en cuanto a la peticionaria, el acuerdo no recoge su aportación económica ni su labor en el hogar en concepto de pensión alimentaria. Tampoco nada en el expediente o el acuerdo indica la proporción en la que la pensión alimentaria fue acordada entre las partes. Ante esta situación, el acuerdo es claro al reconocer solamente el descuento de las aportaciones a la pensión alimentaria provista por el recurrido. Por lo tanto, no procede utilizar métodos externos al acuerdo para descontar aportaciones a la pensión alimentaria de la peticionaria ni para "acreditarle aportaciones" a la hipoteca como parte de una obligación alimentaria que no fue incorporada al acuerdo y tampoco se deduce del mismo. Enfatizamos que las Guías están diseñadas solamente para determinar la obligación de los alimentantes para con los menores. Del derecho expuesto únicamente podemos concluir que el acuerdo no era perjudicial para las menores y que tampoco fue producto de la irreflexión o de la coacción de alguna de las partes. Por lo tanto, resulta irrazonable y contrario a derecho la aplicación de las Guías para calcular un crédito a favor de la peticionaria en cuanto al pago hipotecario.

Sin embargo, conforme al acuerdo, la peticionaria puede reclamar lo que le corresponde. En vista de que no existe en el expediente información sobre gastos de conservación, mantenimiento u otros posibles créditos que

ella pueda adicionalmente reclamar, su participación se limita al exceso no correspondiente al recurrido.

VI

Por los fundamentos antes expresados, se revoca el dictamen recurrido y se devuelve el caso al foro de instancia para la continuación de los procedimientos conforme lo aquí resuelto.

Se dictará Sentencia de conformidad.


                              Mildred G. Pabón Charneco
                                   Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Francisco Y. Díaz Rodríguez<br><br>Recurrido<br><br>v.<br><br>Glorivette García Neris<br><br>Peticionaria | CC-2020-0035 | |

SENTENCIA

En San Juan, Puerto Rico, a 26 de enero de 2022.

Por los fundamentos antes expresados, se revoca el dictamen recurrido y se devuelve el caso al foro de instancia para la continuación de los procedimientos conforme lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez, los Jueces Asociados señores Estrella Martínez y Colón Pérez concurren.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo