Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| *NICE REALTY GROUP, LLC*; INVERSIONES B TRES, INC. <br> **Apelados** <br><br> V. <br><br><br> ORIENTAL BANK PUERTO RICO <br><br> **Apelante** | KLAN202400644 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan <br><br> Civil. Núm. SJ2021CV06149 <br><br> Sobre: Dolo, Mala Fe y Negligencia en el Cumplimiento de Contrato de Opción de Compra |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 26 de agosto de 2024.

El 8 de julio de 2024, Oriental Bank de Puerto Rico (Oriental o apelante) compareció ante nos mediante un recurso de *Apelación*[1] y solicitó la revisión de una *Sentencia* que se emitió y notificó el 6 de mayo de 2024 por el por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Solicitud de Sentencia Sumaria* que presentaron *Nice Realty Group, LLC (Nice Realty)* e Inversiones B Tres, Inc. (Inversiones B Tres) (en conjunto, los apelados) y No Ha Lugar a la *Moción de Sentencia Sumaria* que presentó Oriental. En consecuencia, declaró Ha Lugar la *Demanda.*

Por los fundamentos que expondremos a continuación, **denegamos** el recurso de epígrafe.

---

[1] Acogemos la apelación de epígrafe como un *certiorari,* por ser el recurso adecuado para la revisión de la determinación recurrida. Sin embargo, para fines administrativos, mantenemos la codificación alfanumérica que la Secretaría de este foro le asignó al caso.

I.

El 22 de septiembre de 2021, los apelados presentaron una *Demanda* sobre dolo, mala fe, negligencia en el cumplimiento de contrato de opción de compra y daños y perjuicios en contra de Oriental.[2] Alegaron que, el 18 de mayo de 2021 suscribieron un *Contrato de Opción de Compra* con Scotiabank, ahora Oriental, sobre una propiedad ubicada en el condominio Astralis, apartamento, 815 en Carolina, Puerto Rico. El precio de compraventa pactado fue de $180,000.00. Sostuvieron, que como parte de la opción entregaron un cheque por la cantidad de $5,400.00 como prima. Indicaron que, entre mayo de 2017 a abril de 2020, Scotiabank continuó informando el estado procesal de las propiedades opcionadas, toda vez que la representación legal de Scotiabank no había dado el visto bueno para el cierre. No obstante, esbozaron que el 5 de mayo de 2020, la propiedad fue vendida a un tercero por la cantidad de $119,527.00. Enfatizaron que, posteriormente, dicho tercero, vendió la propiedad a otro comprador por el precio de $299,000.00.

Por otra parte, señalaron que el 19 de mayo de 2019, Scotiabank y Nice Realty otorgaron un *Contrato de Opción de Compra* sobre una propiedad ubicada en el condominio Le Rivage, apartamento 75, Condado, Puerto Rico y, que, al otorgar el contrato, entregaron un cheque de gerente de $6,000.00. Plantearon que, al igual que el contrato del condominio Astralis, este tenía un periodo de quince (15) días para ejercer la opción. Sostuvieron que, se mantuvieron realizando gestiones para el otorgamiento del contrato. Sin embargo, se les informó que no se había completado el proceso de lanzamiento del apartamento, por lo que Oriental procedió a devolver el dinero del depósito de la opción.

---

[2] Véase, págs. 30-37 del apéndice del recurso.

Así las cosas, señalaron que Oriental incurrió en dolo contractual, mala fe y negligencia al rehusarse a cumplir con la obligación de vender las propiedades bajo los términos estipulados en la opción. Respecto a la venta de la propiedad del condominio Astralis, enfatizaron que les causó pérdidas económicas y se vieron privados de realizar una inversión, la cual les generaría ganancias de reventa. En cuanto a la propiedad del condominio Le Rivage, argumentaron que Oriental utilizó como subterfugio impedimentos regulatorios internos del banco para no cumplir con lo pactado. Por todo lo anterior, solicitaron una indemnización por concepto de daños y perjuicios por el incumplimiento de las obligaciones contractuales y el pago de las ganancias dejadas de percibir, por una suma no menor de $119,000.00 por el contrato de opción del condominio de Astralis y, que se ordenara el cumplimiento específico del contrato de opción de compra de la propiedad en Le Rivage.

En respuesta, el 19 de noviembre de 2021, Oriental presentó su *Contestación a Demanda* en la cual negó la mayoría de las alegaciones.[3] Como defensas afirmativas, adujo que no actuó de forma dolosa, negligente o en contravención a alguna relación contractual. Apuntó, que la causa de acción de los apelados era en contra de un tercero. A su vez, expuso que aplicaba la doctrina de imposibilidad sobrevenida y la doctrina de condición resolutoria implícita en el curso de los negocios entre las partes. Por último, indicó que la reclamación de los apelados estaba limitada por los términos contractuales acordados entre las partes.

Tras varios trámites procesales los cuales no son necesarios pormenorizar, el 1 de febrero de 2024, Oriental presentó una *Moción de Sentencia Sumaria*.[4] En esencia, arguyó que en ambos contratos

---

[3] Íd., págs. 38-45.
[4] Íd., págs. 114-661.

de opción se pactó que, de no concretarse la compraventa por causas atribuibles a la vendedora, el único remedio que los apelados tenían disponible era la devolución de la prima. Sostuvo que procedió a devolver la prima de $5,400 correspondiente al contrato de Astralis y $6,600 correspondiente al contrato de Le Rivage. Enfatizó, que el lenguaje sobre el remedio único de la devolución de la prima era especifico, por lo que los apelados con su firma consintieron a ese remedio en particular. Por último, señaló que los apelados renunciaron a entablar una acción judicial.

En la misma fecha, a saber, el 1 de febrero de 2024, Nice Realty e Inversiones B Tres presentaron su *Moción de Sentencia Sumaria.*[5] En esencia, solicitaron que el foro primario determinara que Oriental estaba obligado a vender las propiedades bajo el principio de *pacta sunt servanda.* Además, plantearon que el TPI debía determinar que el incumplimiento de los contratos de opción generaba una causa de acción en daños y perjuicios a su favor.

De igual forma, esbozaron que Oriental pretendía que las cláusulas del contrato relativas a la devolución de la prima se interpretaran como único remedio de forma acomodaticia. Aclararon que, en ningún momento consintieron a que el único remedio fuera la devolución de la prima. A su vez, argumentaron que los actos de Oriental demostraban un incumplimiento voluntario e intencional al vender la propiedad a un tercero y, que dicho acto derrotaba la premisa de no poder completar el proceso de compraventa. Por todo lo anterior, plantearon que los actos de Oriental fueron dolosos y atentaban contra la buena fe contractual.

En respuesta, el 4 de marzo de 2024, Oriental presentó su *Oposición a Solicitud de Sentencia Sumaria* en la cual reiteró sus planteamientos iniciales de la moción de sentencia sumaria.[6] De

---

[5] Íd., págs. 662-708.
[6] Íd., págs. 709-729.

igual forma, el 4 de marzo de 2024, los apelados presentaron su *Oposición a Solicitud de Sentencia Sumaria.*[7] En ella, reiteraron los argumentos presentados en su moción de sentencia sumaria.

Luego de examinar los argumentos presentados por las partes, el 6 de mayo de 2024, el TPI emitió y notificó una *Sentencia.*[8] En primer lugar, consignó cuarenta y siete (47) determinaciones de hechos. Luego, conforme a las determinaciones de hechos y el derecho aplicable el TPI determinó que no había controversia de hechos, dado que las partes otorgaron las respectivas primas al momento de suscribir el contrato de opción y, que los apelados cumplieron con ejercer la opción al presentar el cheque de prima dentro del término estipulado de quince (15) días en ambos contratos. Asimismo, concluyó que ambos contratos eran claros al establecer los escenarios en que se podían considerar como justa causa para la resolución del contrato. No obstante, determinó que, la venta a un tercero no se podía interpretar como una imposibilidad para cerrar la compraventa por causa de la vendedora. Particularmente, el TPI concluyó lo siguiente:

> A la luz de las determinaciones de hechos antes expuesta, este Tribunal acoge la postura adelantada por la Nice Realty e Inversiones B Tres y concluye que, Oriental Bank viene obligada al pago por la cantidad de $119,000.00, pactado en el contrato de opción referente a la propiedad ubicada en el Condominio Astralis, Apartamento 815. **Como se sabe, "quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravienen al tenor de aquellas". Art. 1054 del Código Civil, 31 LPRA ant. sec. 3018.** (Énfasis suplido).
>
> Asimismo, se determina que la demandada viene obligada a vender a los demandantes la propiedad ubicada en el Condominio Le Rivage, Apartamento 7- s, por el precio pactado en el contrato de opción. Sabido es que, conforme al principio de pacta sunt servanda, una vez perfeccionado un contrato, éste cobra vida propia y se convierte en "ley entre las partes". Artículo

---

[7] Íd., págs.730-795.
[8] Íd., págs. 1-17.

> 1233 del Código Civil, supra; véase, además, Oriental Bank v. Perapi et. al., 192 DPR 7, 15 (2014).
>
> Los hechos alegados en este caso, no se puede considerar como justa causa para que Oriental Bank quede eximido del cumplimiento de lo pactado. De una interpretación de las cláusulas de ambos contratos, los hechos de este caso y a tono con los principios básicos de buena fe contractual, no podemos resolver que, el que no se llevó a cabo la compraventa por causas de la vendedora, se justifique como escenario en que el único remedio sea la devolución de la prima, sin más. No se puede catalogar como imposibilidad sobrevenida como argumentó la demandada.

Inconforme, el 21 de mayo de 2024, Oriental presentó su *Moción de Reconsideración* en la cual reiteró sus planteamientos iniciales.[9] Además, adujo que la compraventa no se llevó a cabo, toda vez que no tenía el título de las propiedades, según requerido por Nice Realty. Así pues, razonó que la pendencia litigiosa en el caso *Scotiabank v. Font Castro; Le Reviage Realty, Inc,; y Caribbean Real Estate Investment Corporation*, alfanumérico K CD2014-2577, no permitió el lanzamiento de la propiedad, por lo que constituyó una imposibilidad para llevar a cabo la compraventa.

En respuesta, el 6 de junio de 2024, Nice Realty e Inversiones B Tres, presentaron su *Oposición a solicitud de reconsideración.*[10] En síntesis, alegaron que no existía controversia de hecho con relación a que Oriental era el titular de ambas propiedades y que de forma caprichosa se negó a venderlas. Ello, en incumplimiento con las obligaciones pactadas.

El 4 de junio de 2024, el TPI emitió y notificó una *Resolución* declarando No Ha Lugar a la moción de reconsideración.[11] Aún inconforme, el 8 de julio de 2024, el apelante presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el Tribunal de Primera Instancia al pasar por alto que tanto el contrato de opción para la propiedad Astralis como para la propiedad de Le Rivage establecen que el único remedio disponible ante la imposibilidad de la compraventa es la**

---

[9] Íd., págs. 18-23.
[10] Íd., págs. 24-28.
[11] Íd., pág. 29.

**devolución de la prima, tal como procedió el banco antes de la interposición de la demanda.**

**Erró el Tribunal de Primera Instancia al pasar por alto que tanto el contrato de opción para la propiedad en Astralis como para la propiedad en Le Rivage expresamente vendan que los demandantes puedan recurrir a la vía judicial para procurar remedios que por predisposición contractual no tienen disponibles.**

**Erró el Tribunal de Primera Instancia al no tomar en cuenta diversos hechos incontrovertidos presentados por Oriental en su moción de sentencia sumaria, los que evidencian la imposibilidad para realizar la compraventa para la propiedad en Le Rivage y la aplicación del único remedio contractualmente disponible en tal caso: la devolución de la prima.**

El 6 de agosto de 2024, Oriental presentó su *Alegato de las partes apeladas Nice Realty Group, LLC; e Inversiones B Tres, Inc.* Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nuestra consideración. *Veamos.*

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró,* 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al

resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, al determinar si procede expedir o denegar un recurso de *certiorari* en el cual se recurre de un asunto postsentencia, debemos evaluar únicamente los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Íd. La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró*, supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

**-B-**

La Regla 42.1 de las Reglas de Procedimiento Civil, 32 LPRA, Ap. V, R. 42.1, define la sentencia como cualquier determinación del TPI que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse. Particularmente, una sentencia final, es aquella que resuelve todas las controversias entre todas las partes de forma tal que no quede pendiente nada más que la ejecución de ésta. *Cruz Roche v. Colon y Otros,* 182 DPR 313, 323 (2011). Es sentencia firme, por el contrario, aquella contra la que no cabe un recurso de apelación. *Suarez v. E.L.A.,* 162 DPR 43, 62, (2004).

De otra parte, según la Regla 43.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3, una sentencia parcial es la determinación que hace el TPI cuando está ante un pleito que envuelve controversias o partes múltiples, resolviendo finalmente alguna de las reclamaciones, o todas en cuanto a una parte. **De igual forma, la referida regla explica que será una sentencia parcial final**

**aquella que al resolverse el juzgador le adscribe carácter de finalidad. Es decir, que cumple con dos requisitos, a saber: (1) que el juzgador exprese clara e inequívocamente que no existe razón para posponer la resolución de esta reclamación hasta la adjudicación total del pleito, y (2) que ordene expresamente que se registre y se notifique esa sentencia.** *Rosario y otros v. Hospital Gen. Menonita, Inc.,* 155 DPR 49, 57 (2001). (Énfasis nuestro).

En específico, la Regla 42.3, *supra*, dispone que,

Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra tercero o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer que se dicte sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre la sentencia. Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a las reclamaciones o los derechos y las obligaciones en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a transcurrir en lo que a ella respecta los términos dispuestos en las Reglas 43.1, 47, 48 y 52.2 de este apéndice. 32 LPRA Ap.V. R. 42.3

El propósito de cumplir con los requisitos de la Regla 42.3 de Procedimiento Civil, *supra,* al disponer de una reclamación parcialmente*,* es que la parte perdidosa quede debidamente advertida de su derecho de apelar ante un foro de mayor jerarquía. *Figueroa v. Del Rosario,* 147 DPR 121, 127 (1998). Así también, como mencionamos anteriormente, al otorgar esta finalidad y una vez quede correctamente notificada y archivada, los términos para solicitar remedios post sentencia comenzarán a transcurrir. *Rosario y otros v. Hospital Gen. Menonita, Inc.,* supra, pág. 57.

Asimismo, es importante recordar que esta sentencia parcial, por tener finalidad, es una determinación susceptible de apelación. Entonces, las partes tienen derecho a la revisión de ese dictamen en

este Tribunal de Apelaciones, mediante el vehículo de la apelación. 32 LPRA Ap. V, R. 52. Así lo establece el Art. 4.006(a) de la Ley de la Judicatura, *supra,* en el cual faculta al Tribunal de Apelaciones a conocer mediante apelación, "toda sentencia final dictada por el Tribunal de Primera Instancia". 4 LPRA sec. 24 (x)(a).

Dicho lo anterior, si una sentencia parcial adolece de la referida determinación de finalidad que requiere la Regla 42.3 de Procedimiento Civil, *supra,* no advendrá final y la misma no constituirá más que una resolución interlocutoria, que podrá revisarse sólo mediante recurso de *certiorari,* si así lo permite la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, o mediante recurso de apelación cuando recaiga sentencia final en el caso sobre el resto de las reclamaciones. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 95 (2008).

Por tanto, si la intención del TPI es disponer de la totalidad de las reclamaciones ante su consideración, así debe consignarlo expresamente en la parte dispositiva de su sentencia. Consecuentemente, el omitir la adjudicación de una reclamación en la parte dispositiva de una sentencia tiene el efecto de mantener tal reclamación "viva y pendiente de adjudicación". *Cárdenas Maxán v. Rodríguez,* 119 DPR 642, 658 (1987).

En modo de resumen, a la hora de determinar si estamos ante una sentencia revisable por medio de un recurso de apelación, o ante un dictamen interlocutorio revisable mediante el auto discrecional de *certiorari,* es crucial auscultar si la determinación a revisarse adjudica de forma *final* el asunto litigioso ante el foro de instancia en cuanto a una o más partes, o una o más causas de acción, o si sólo resuelve algún asunto interlocutorio sin disponer de la totalidad del caso. Como mencionamos, de tratarse de una resolución u orden interlocutoria emitida por el Tribunal de Primera Instancia, una parte interesada en solicitar revisión puede hacerlo

mediante el auto discrecional del *certiorari*, sujeto a las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra.*

III.

En el recurso ante nos, Oriental nos solicitó la revocación de una *Sentencia* que se emitió y notificó el 6 de mayo de 2024. Surge del expediente ante nuestra consideración que, el 22 de septiembre de 2021, los apelados presentaron una *Demanda* sobre dolo, mala fe, negligencia en el cumplimiento de contrato de opción de compra y daños y perjuicios en contra de Oriental. Posteriormente, el 1 de febrero de 2024, Oriental presentó una *Moción de Sentencia Sumaria.* Por su parte, y en la misma fecha, Nice Realty e Inversiones B Tres presentaron su *Moción de Sentencia Sumaria.* Atendidas ambas mociones, el TPI emitió la *Sentencia* impugnada, en la cual acogió en su totalidad la moción de sentencia sumaria que presentaron los apelados, en consecuencia, declaró Ha Lugar la Demanda.

Cabe precisar que el TPI otorgó a los apelados **la suma de $199,000.00 por las ganancias dejadas de percibir**. (Énfasis suplido). No obstante, el TPI determinó lo siguiente: "*Como se sabe, "quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravienen al tenor de aquellas". Art. 1054 del Código Civil, 31 LPRA ant. sec. 3018*". Entiéndase, el TPI concluyó que los apelados tenían derecho a reclamar daños. Sin embargo, no adjudicó el monto de estos.

Al examinar el expediente ante nuestra consideración, notamos que la llamada apelación impugna un dictamen que no resolvió todos los asuntos que le fueron planteados. Según mencionamos, el omitir una reclamación en la parte dispositiva de una sentencia tiene el efecto de mantener tal reclamación viva y

pendiente de adjudicación. Por lo tanto, ante la ausencia de una manifestación en la parte dispositiva sobre los daños y perjuicios que alegaron los apelados en la *Demanda*, nos es forzoso concluir que el TPI dejó viva y pendiente de adjudicación dicha reclamación. Al así proceder, el dictamen del TPI no constituye una sentencia de la cual pueda presentarse un recurso de apelación.

De igual forma, debemos aclarar que el dictamen no es una sentencia parcial, por no cumplir con los requisitos de la Regla 42.3 de las de Procedimiento Civil, *supra*. Por lo cual, no surge de su dictamen que el TPI tuviera la intención de resolver finalmente una reclamación y continuar con las reclamaciones restantes. Por lo anterior, debemos concluir que el dictamen impugnado es una resolución interlocutoria que no culmina el pleito en su totalidad, por lo cual acogemos el presente como un recurso discrecional de *certiorari*. Con ello en mente y dada la naturaleza de la actuación del TPI, resolvemos que, en este caso, no están presentes ninguno de los criterios de la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, para atender el recurso. Aclaramos que con esta determinación no estamos adjudicando si proceden o no los daños reclamados.

Por el contrario, lo más adecuado es que el TPI disponga de la totalidad de las reclamaciones de las partes de epígrafe, pues lo contrario constituiría un fraccionamiento indebido del caso.

IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de *certiorari*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones