Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| 3 A'S INVESTMENT LLC<br>**Apelado**<br><br>V.<br><br>ALAMEDA HOLDINGS CORP.<br>**Apelante** | TA2025AP00052 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil. Núm. MZ2020CV01279<br><br>Sobre: Reivindicación, Deslinde Y Amojonamiento |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de julio de 2025.

El 26 de junio de 2025, Alameda Holdings Corp. (Alameda Holdings o la peticionaria) compareció ante nos mediante una *Apelación*[1] y solicitó la revisión de una *Sentencia* que se emitió y notificó el 10 de junio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Demanda* presentada por 3A's Investment LLC. (3A's Investment o la recurrida) y, en consecuencia, le ordenó a Alameda Holdings a constituir una servidumbre de paso a favor de 3A's Investment. A su vez, dispuso la cesión gratuita de dos áreas invadidas a la recurrida y ordenó a las partes otorgar los instrumentos públicos necesarios para la rectificación de cabida y la inscripción correspondiente en el Registro de la Propiedad.

Por los fundamentos que expondremos a continuación, ***denegamos*** el recurso de epígrafe.

---

[1] Acogemos la apelación de epígrafe como un *certiorari*, por ser el recurso adecuado para la revisión de la determinación recurrida. Sin embargo, para fines administrativos, mantenemos la codificación alfanumérica que la Secretaría de este foro le asignó al caso.

I.

El 1 de junio de 2021, el Dr. Roberto García Rivera (señor García) presentó una *Demanda*.[2] En esta, alegó ser titular de una propiedad ubicaba en Municipio de Mayagüez. Expresó que en el solar existía una estructura de concreto dedicada a vivienda que estaba habitada por sus padres. Manifestó que dicha propiedad colindaba con terrenos que eran propiedad de la peticionaria. Sostuvo que esta última había entorpecido de manera ilegítima el uso y disfrute de su propiedad, negándole el acceso y posesión conforme a las dimensiones registrales y los linderos establecidos en los planos de mensura. Indicó que esta situación constituía una invasión parcial de su terreno. Esbozó que, a tales fines, contrató los servicios de un agrimensor quien realizó una verificación de los puntos de colindancia y concluyó que Alameda Holdings había edificado una estructura dentro del terreno del señor García, lo que había generado una privación del uso de su propiedad.

Alegó que, ante la negativa reiterada de Alameda Holdings de reconocer el plano presentado por el agrimensor o de efectuar su propia mensura, no había sido posible lograr un deslinde extrajudicial. Ante dicha situación, le solicitó al TPI a que decretara el deslinde judicial de las fincas involucradas, permitiéndole a un ingeniero o a un agrimensor licenciado a acceder a las propiedades para tomar las medidas necesarias para fijar los puntos de colindancia y preparar los planos correspondientes con el fin de restituirle la porción de terreno que, a su entender le pertenece.

Por otro lado, argumentó que la actuación de la parte peticionaria le había causado daños y perjuicios, tanto económicos como emocionales, al impedirle el uso pleno de su propiedad, además de esforzarlo a incurrir en gastos legales y técnicos para

---

[2] Véase, Entrada 1 del apéndice del recurso, SUMAC TA.

hacer valer su derecho. Por estos motivos, reclamó una indemnización de quince mil ($15,000.00) dólares.

En respuesta, ese mismo día, a saber, el 1 de junio de 2021, la peticionaria presentó una *Contestación a Demanda y Reconvención.*[3] Manifestó que, al momento de adquirir su propiedad mediante escritura otorgada el 18 de marzo de 2017, la finca colindante se encontraba en estado de abandono. Indicó que, posteriormente, dicha propiedad fue objeto de remodelaciones, pero nunca había estado habitada, por lo que actualmente no contaba con ocupantes. Añadió que, según constaba en el Registro de la Propiedad, la finca colindante fue inscrita a nombre del Sr. Carlos García Monagas y la Sra. Livia Rivera Carlo el 14 de abril de 1967, y desde entonces no figuraba ningún traslado de dominio inscrito a favor del señor García. Por lo tanto, impugnó la legitimación de este para instar la presente acción.

De otra parte, sostuvo que, los linderos entre su propiedad y la finca colindante habían estado claramente establecidos y deslindados por más de treinta (30) años. Expresó que dicha demarcación constaba tanto en los asientos registrales como en los planos de mensura y era fácilmente identificable mediante una inspección visual. Señaló que las fincas estaban separadas por un muro y un desnivel pronunciado en el terreno, elementos que evidenciaban la existencia de límites claros y definidos. Aseveró que, los titulares anteriores de la finca colindante, padres del señor García, consintieron expresamente o al menos nunca se opusieron a dicha delimitación ni a las construcciones realizadas dentro de su predio, incluyendo una edificación que ahora el señor García erróneamente alegaba que invadía su terreno en menos de un metro cuadrado.

---

[3] Véase, Entrada 11 del apéndice del recurso, SUMAC TA.

Por los motivos antes expuestos, negó haberle impedido al señor García el uso y disfrute de su propiedad. Planteó que la verdadera motivación detrás de la *Demanda* respondía a que se le había negado al señor García el establecimiento de una nueva vía de acceso a favor de su finca a través de los terrenos de la peticionaria. Indicó que, como consecuencia de dicha negativa, el señor García había recurrido a esta acción judicial como medio de presión, alterando deliberadamente las colindancias para aparentar una invasión inexistente y así forzar una cesión de terrenos que no le correspondía.

Argumentó que no existía confusión alguna sobre los límites entre las propiedades y, por lo tanto, no procedía el remedio de deslinde judicial que se pretendía solicitar. Afirmó que nunca había recibido una solicitud formal para permitir acceso a su finca con fines de medición, y que en ningún momento se había negado obstinadamente a colaborar en ese sentido, como incorrectamente se alegó en la *Demanda*.

Finalmente, negó haberle causado daño alguno al señor García o haberle afectado su uso y disfrute del inmueble. Insistió que todas sus actuaciones habían sido dentro de los linderos legítimamente establecidos de su predio, el cual había poseído de manera pública, pacífica, continua e ininterrumpida, en carácter de dueño, por más de tres décadas. Argumentó que no correspondía crear una ficción de incertidumbre sobre unos linderos que habían estado claramente definidos por tanto tiempo y cuya validez no fue objetada por los anteriores titulares de la finca colindante.

A su vez, Alameda Holdings presentó una *Reconvención* junto a su alegación responsiva.[4] En primer lugar, sostuvo que adquirió en buena fe y mediante justo título su propiedad en el Municipio de

---

[4] Íd.

Mayagüez conforme surgía de la escritura pública otorgada el 18 de marzo de 2017 por Scotiabank de Puerto Rico. Expresó que la finca, que contaba con una casa enclavada en su solar, colindaba al sur con terrenos pertenecientes a los señores Carlos García Monagas y Livia Rivera Carlo, padres del señor García.

Indicó que, desde la adquisición del inmueble, no había realizado modificación alguna a las estructuras físicas que delimitaban su propiedad y la finca colindante. Reiteró que los linderos entre ambas fincas habían estado visiblemente definidos por décadas, según evidenciaban los planos de segregación, las escrituras públicas y una inspección física del lugar. Planteó que la separación entre ambas propiedades estaba demarcada por muros de cemento, estructuras de bloque, varillas, y un desnivel natural claramente perceptible. Insistió que dichos elementos habían estado presentes por más de treinta (30) años sin que hubiesen sido objeto de disputa o impugnación por parte de los titulares colindantes.

Por otro lado, indicó que, el señor García, quien residió durante décadas en la finca de sus padres, conocía o debió conocer perfectamente la ubicación de los linderos. No obstante, indicó que, en noviembre del año 2019, este dirigió una carta al Dr. Alameda Ramírez (doctor Alameda), representante de Alameda Holdings, solicitando utilizar parte de su solar como vía de paso para su propio predio, solicitud que acompañó con una carta de la Junta de Planificación en torno a una presunta querella del año 1973, la cual concluía que la edificación en la propiedad del doctor Alameda era provisional y debía ser eliminada cuando terminaran las obras de construcción en la Urb. Mansiones de España. Manifestó que, mediante esta carta, el señor García intentó presionar al doctor Alameda para que cediera parte de su terreno, sugiriendo que, de no hacerlo, promovería la demolición de la estructura ubicada en su finca.

Puntualizó que, como medida preventiva, y para evitar que el señor García creara una entrada o salida no autorizada por su propiedad, el doctor Alameda se vio en la necesidad de instalar una cadena para impedir el paso de vehículos por la zona en cuestión. Sostuvo que, en octubre del año 2020, el señor García volvió a comunicarse con el doctor Alameda reiterando su solicitud, esta vez advirtiéndole del "riesgo" de demolición de su edificación si no accedía a sus demandas. Alegó que incluso, el señor García propuso que se le permitiera entrar y cruzar la propiedad del doctor Alameda utilizando un espacio de menos de metro y medio, alegando que no se causaría perjuicio alguno.

Expresó que, estas acciones antes descritas, habían sido interpretadas por el doctor Alameda como intentos deliberados de coacción, mediante los cuales el señor García buscaba crear una falsa controversia sobre linderos con el único propósito de forzar una negociación indebida o establecer una servidumbre de paso en beneficio de su finca. Adujo que los actos del señor García le habían causado una profunda ansiedad al doctor Alameda, quien había sido objeto de hostigamiento persistente y temerario por parte del señor García, pese a que había adquirido su propiedad como tercero registral de buena fe y sin conocimiento de disputa alguna.

Añadió que, la presente acción legal se instó con temeridad, mala fe y en claro abuso del derecho, ya que el señor García conocía que su acción estaba prescrita. Insistió que su predio había estado en posesión pacífica, pública y continua por más de treinta (30) años, y gozaba de justo título. Por tanto, concluyó que la presente reclamación no sólo carecía de fundamento jurídico, sino que constituía un intento indebido de intimidación para obtener el acceso deseado.

Por último, manifestó que, como consecuencia de las acciones antes mencionadas, el doctor Alameda había sufrido angustias

mentales y daños que se estimaban en una suma no menor de cincuenta mil ($50,000.00) dólares. Además, solicitó que se condenara al señor García al pago de las costas del litigio y honorarios de abogado por entender que la presente causa de acción era frívola y maliciosa.

El 8 de julio de 2021, el señor García presentó su *Contestación a Reconvención*.[5] En esta se limitó a negar la mayoría de las alegaciones en su contra. Posteriormente, el 6 de septiembre de 2022, se enmendó la Demanda con el único fin de sustituir al demandante original por el nuevo propietario de la propiedad objeto de esta controversia, 3A's Investment.[6]

Luego de varios trámites procesales que no son pertinentes discutir, el 25 de abril de 2024, Alameda Holdings presentó una *Moción de Sentencia Sumaria*.[7] En esta, solicitó la desestimación de las causas de acción de deslinde y reivindicación instadas por 3A's Investment, por no cumplir con los requisitos legales aplicables. En cuanto a la acción de deslinde, argumentó que no procedía ya que la recurrida no cumplió con dos requisitos esenciales establecidos por la jurisprudencia a saber, (1) no había alegado adecuadamente la razón por la cual solicitaba el deslinde, y (2) no había realizado ni demostrado un requerimiento previo a la parte colindante para llevar a cabo dicha operación. Planteó que las cartas enviadas por el señor García en el año 2019 y 2020 evidencian que su verdadero interés era obtener un acceso nuevo a su finca a través del terreno del doctor Alameda, y no un deslinde en los términos legales. Además, sostuvo que el inicio de este pleito respondía a una estrategia de presión, y no a un interés legítimo de clarificar linderos confundidos.

---

[5] Véase, Entrada 13 del apéndice del recurso, SUMAC TA.
[6] Véase, Entrada 40 del apéndice del recurso, SUMAC TA.
[7] Véase, Entrada 64 del apéndice del recurso, SUMAC TA.

Respecto a la acción reivindicatoria, reconoció que, según la mensura presentada, su propiedad invadía el terreno de la parte recurrida en dos áreas, totalizando 4.607 metros cuadrados. Sin embargo, argumentó que, conforme a la doctrina de la accesión invertida, dicha edificación no podía ser objeto de reivindicación. Adujo que cumplía con todos los requisitos establecidos en *Laboy Roque v. Pérez*, 181 DPR 718 (2011), para que aplicara dicha doctrina, a saber: (1) que era titular del terreno donde se encontraba la estructura; (2) que la construcción invadía parcialmente un solar colindante, según el plano del agrimensor de la parte recurrida; (3) que la edificación formaba un todo indivisible con ambos terrenos; (4) que la estructura edificada tenía un valor y una importancia sustancialmente mayor al terreno invadido; (5) que era poseedor de buena fe, ya que adquirió la propiedad con la estructura ya construida, sin haber participado en su construcción ni haber recibido oposición o notificación previa; y, por último; (6) que la supuesta invasión fue notificada por primera vez en el año 2020, más de cuatro décadas después de construida la estructura, lo que hacía que dicha oposición no fuese oportuna.

En vista de lo anterior, argumentó que 3A's Investment no podía reclamar la demolición de la estructura ni la restitución del terreno invadido, sino que, como mucho, tendría derecho a una indemnización por el valor del suelo ocupado, si lograba probar daños. Por lo tanto, solicitó que se dictara sentencia sumaria desestimando ambas causas de acción.

Por su parte, el 5 de junio de 2024, 3A's Investment presentó su *Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria Parcial*.[8] Expresó que no existía controversia material entre las partes respecto a los siguientes hechos fundamentales: (1) que

---

[8] Véase, Entrada 82 del apéndice del recurso, SUMAC TA.

ambas partes eran legítimas propietarias de los inmuebles en cuestión; (2) que dichas propiedades eran colindantes; y (3) que la peticionaria había invadido el terreno de la recurrida en al menos dos áreas específicas.

Por otro lado, señaló que, de la evidencia sometida por la propia peticionaria, particularmente las fotografías contenidas en el Anejo 8 de su Moción de Sentencia Sumaria, se desprendía que la invasión consistía en una pared de bloques sin empañetar, construida sobre el terreno de la recurrida. Puntualizó que dicha construcción no formaba parte integral ni estructural del edificio principal, ni constituía un elemento indispensable o indivisible del mismo. Indicó que, por el contrario, la pared se edificó exclusivamente con el propósito de ampliar el terreno utilizado por la peticionaria para establecer un área de estacionamiento que únicamente beneficiaba a los arrendatarios del inmueble de su propiedad.

En vista de lo anterior, concluyó que resultaba evidente que la demolición o remoción de la referida pared no ocasionaría un impacto significativo a la estructura general de la propiedad de la peticionaria, ni comprometería su integridad. Manifestó que era claro que, de no haberse apropiado indebidamente del terreno de la parte recurrida, la parte peticionaria no habría podido desarrollar el estacionamiento en cuestión.

Así pues, sostuvo que, a la luz de los hechos no controvertidos y de la prueba documental ante la consideración del TPI, no existía impedimento alguno para la emisión de una Sentencia Sumaria Parcial, dejando únicamente pendiente la celebración de una vista evidenciaria para la determinación de los daños sufridos por la recurrida como consecuencia de la invasión a su propiedad.

El 6 de junio de 2024, Alameda Holdings presentó su postura en cuanto a la oposición de su solicitud de sentencia sumaria y el

28 de junio de 2024, presentó su oposición a la solicitud de sentencia sumaria parcial de la parte recurrida.[9] Luego de la presentación de los escritos relacionados a la solicitud de sentencia sumaria, el 4 de febrero de 2025, 3A's Investment presentó una moción en la cual solicitó la celebración de una inspección ocular en el área de controversia con el fin de que el TPI tuviese una mejor perspectiva de las alegaciones de las partes y la totalidad de la evidencia presentada.[10] Atendida esta solicitud, el 5 de febrero de 2025, el TPI emitió una *Orden* que se notificó el 6 de febrero de 2025, declarando Ha Lugar la referida solicitud y, en consecuencia, ordenando la celebración de una inspección ocular para el 20 de febrero de 2025.[11] La inspección ocular se celebró y se preparó un *Acta de Inspección Ocular* a tales efectos.[12]

Habiéndose celebrado la inspección ocular y sometido el caso para su consideración, el 10 de junio de 2025, el TPI emitió y notificó una *Sentencia.*[13] En esta, puntualizó que, durante la inspección ocular celebrada, las partes, junto al agrimensor, el Sr. Rene Guerra, pudieron constatar cada uno de los puntos de colindancias entre ambas propiedades que estaban en controversia. Particularmente, sostuvo que, mediante una mensura realizada por dicho agrimensor, la cual fue estipulada por las partes, se evidenció que Alameda Holdings ocupó dos áreas del terreno perteneciente a 3A's Investment, una utilizada como estacionamiento y otra donde se construyó parte de un inmueble y una verja, totalizando una invasión de aproximadamente 4.607 metros cuadrados. Además, expresó que también se constató que la parte recurrida propuso establecer una servidumbre de paso sobre un área de 1.240 metros cuadrados del terreno de la parte peticionaria, lo cual representaba

---

[9] Véase, Entrada 83 y 94 del apéndice del recurso, SUMAC TA.
[10] Véase, Entrada 105 del apéndice del recurso, SUMAC TA.
[11] Véase, Entrada 106 del apéndice del recurso, SUMAC TA.
[12] Véase, Entrada 110 del apéndice del recurso, SUMAC TA.
[13] Véase, Entrada 114 del apéndice del recurso, SUMAC TA.

una porción significativamente menor en comparación con el terreno ocupado por Alameda Holdings.

En vista de lo antes mencionado, el TPI resolvió que, conforme a la jurisprudencia vigente, en casos de construcción extralimitada realizada de buena fe, no procedía necesariamente la demolición de la estructura, ya que podría representar un perjuicio desproporcionado tanto para la parte demandada como para la parte demandante. Expuso que, en cambio, la parte propietaria del terreno invadido tenía derecho a exigir compensación por el valor del terreno ocupado y los daños sufridos, o incluso a solicitar la demolición si así lo consideraba, siempre que no se causara un daño mayor.

Sin embargo, determinó que, en este caso particular, considerando que la demolición de la construcción afectaría la estructura general del inmueble y representaría un gasto excesivo, procedía la imposición de una servidumbre de paso a favor de 3A's Investment como una solución equitativa. El Tribunal recurrió al principio de equidad como fundamento para adoptar una medida justa y razonable que, aunque no estrictamente prevista por la ley, atiende adecuadamente las circunstancias particulares del caso y promueve una resolución justa y proporcional.

Así pues, el TPI declaró Ha Lugar la *Demanda* presentada por 3A's Investment y, en consecuencia, le ordenó a Alameda Holdings a constituir una servidumbre de paso a favor de 3A's Investment. A su vez, dispuso la cesión gratuita de dos áreas invadidas a la recurrida y ordenó a las partes otorgar los instrumentos públicos necesarios para la rectificación de cabida y la inscripción correspondiente en el Registro de la Propiedad.

Inconforme con este dictamen, el 26 de junio de 2025, Alameda Holdings presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

**Erró el TPI al dictar Sentencia Sumaria a favor del demandante.**

Atendido el recurso, el 3 de julio de 2025, emitimos una *Resolución* concediéndole a 3A's Investment hasta el 10 de julio de 2025 para presentar su postura en cuanto al recurso. Vencido el término para ello, la parte recurrida no presentó su respuesta al recurso de epígrafe. Por consiguiente, declaramos perfeccionado el presente recurso y estando en posición de resolver, procedemos a así hacerlo.

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR 821 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se

recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los

tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

**-B-**

La Regla 42.1 de las Reglas de Procedimiento Civil, 32 LPRA, Ap. V, R. 42.1, define la sentencia como cualquier determinación del TPI que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse. Particularmente, una sentencia final, es aquella que resuelve todas las controversias entre todas las partes de forma tal que no quede pendiente nada más que la ejecución de ésta. *Cruz Roche v. Colón y Otros,* 182 DPR 313, 323 (2011). Es sentencia firme, por el contrario, aquella contra la que no cabe un recurso de apelación. *Suarez v. E.L.A.,* 162 DPR 43, 62, (2004).

De otra parte, según la Regla 43.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3, una sentencia parcial es la determinación que hace el TPI cuando está ante un pleito que envuelve controversias o partes múltiples, resolviendo finalmente alguna de las reclamaciones, o todas en cuanto a una parte. De igual forma, la referida regla explica que será una sentencia parcial final aquella que al resolverse el juzgador le adscribe carácter de finalidad. Es decir, que cumple con dos requisitos, a saber: (1) que el juzgador exprese clara e inequívocamente que no existe razón para posponer la resolución de esta reclamación hasta la adjudicación total del pleito, y (2) que ordene expresamente que se registre y se notifique esa sentencia. *Rosario y otros v. Hospital Gen. Menonita, Inc.,* 155 DPR 49, 57 (2001).

En específico, la Regla 42.3, *supra*, dispone lo siguiente:

> Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra tercero o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer que se dicte sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre la sentencia. Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a las reclamaciones o los derechos y las obligaciones en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a transcurrir en lo que a ella respecta los términos dispuestos en las Reglas 43.1, 47, 48 y 52.2 de este apéndice.

El propósito de cumplir con los requisitos de la Regla 42.3 de Procedimiento Civil, *supra,* al disponer de una reclamación parcialmente*,* es que la parte perdidosa quede debidamente advertida de su derecho de apelar ante un foro de mayor jerarquía. *Figueroa v. Del Rosario*, 147 DPR 121, 127 (1998). Así también, como mencionamos anteriormente, al otorgar esta finalidad y una vez quede correctamente notificada y archivada, los términos para solicitar remedios post sentencia comenzarán a transcurrir. *Rosario y otros v. Hospital Gen. Menonita, Inc.,* supra, pág. 57.

Asimismo, es importante recordar que esta sentencia parcial, por tener finalidad, es una determinación susceptible de apelación. Entonces, las partes tienen derecho a la revisión de ese dictamen en este Tribunal de Apelaciones, mediante el vehículo de la apelación. Regla 52 de Procedimiento Civil, *supra.* Así lo establece el Art. 4.006(a) de la Ley de la Judicatura, 4 LPRA sec. 24 (x)(a), en el cual faculta al Tribunal de Apelaciones a conocer mediante apelación, "toda sentencia final dictada por el Tribunal de Primera Instancia".

Dicho lo anterior, **si una sentencia parcial adolece de la referida determinación de finalidad que requiere la Regla 42.3 de Procedimiento Civil,** *supra***, no advendrá final y la misma no**

**constituirá más que una resolución interlocutoria, que podrá revisarse sólo mediante recurso de *certiorari*, si así lo permite la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, o mediante recurso de apelación cuando recaiga sentencia final en el caso sobre el resto de las reclamaciones.** (Énfasis suplido) *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 95 (2008).

Por tanto, si la intención del TPI es disponer de la totalidad de las reclamaciones ante su consideración, así debe consignarlo expresamente en la parte dispositiva de su sentencia. **Consecuentemente, el omitir la adjudicación de una reclamación en la parte dispositiva de una sentencia tiene el efecto de mantener tal reclamación "viva y pendiente de adjudicación".** (Énfasis suplido) *Cárdenas Maxán v. Rodríguez,* 119 DPR 642, 658 (1987).

En modo de resumen, a la hora de determinar si estamos ante una sentencia revisable por medio de un recurso de apelación, o ante un dictamen interlocutorio revisable mediante el auto discrecional de *certiorari*, es crucial auscultar si la determinación a revisarse adjudica de forma *final* el asunto litigioso ante el foro de instancia en cuanto a una o más partes, o una o más causas de acción, o si sólo resuelve algún asunto interlocutorio sin disponer de la totalidad del caso. Como mencionamos, de tratarse de una resolución u orden interlocutoria emitida por el Tribunal de Primera Instancia, una parte interesada en solicitar revisión puede hacerlo mediante el auto discrecional del *certiorari*, sujeto a las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra.*

III.

En el recurso ante nos, Alameda Holdings nos solicitó la revocación de una *Sentencia* que se emitió y notificó el 10 de junio de 2025. Sin embargo, al examinar el expediente ante nuestra consideración, notamos que el referido dictamen, no resolvió todas

las causas de acción que le fueron planteadas. Ello, toda vez que el TPI omitió expresar en la parte dispositiva una determinación en cuanto a la reconvención que presentó el recurrido el 1 de junio de 2021. En su reconvención, Alameda Holdings solicitó una indemnización por angustias mentales y daños que se estimaban en una suma no menor de cincuenta mil ($50,000.00) dólares. Además, solicitó el pago de las costas del litigio y honorarios de abogado por entender que la presente causa de acción era frívola y maliciosa.

Sin embargo, en la parte dispositiva de la *Sentencia* el TPI no atendió lo solicitado en la reconvención por la parte peticionaria, sino únicamente se limitó a declarar Ha Lugar a la *Demanda* y, en consecuencia, le ordenó a Alameda Holdings a constituir una servidumbre de paso a favor de 3A's Investment. A su vez, dispuso la cesión gratuita de dos áreas invadidas al recurrido y ordenó a las partes otorgar los instrumentos públicos necesarios para la rectificación de cabida y la inscripción correspondiente en el Registro de la Propiedad.

Según mencionamos, el omitir una reclamación en la parte dispositiva de una sentencia tiene el efecto de mantener tal reclamación viva y pendiente de adjudicación. Por lo tanto, ante la ausencia de una determinación en cuanto a la reconvención que presentó Alameda Holdings, nos es forzoso concluir que el TPI dejó viva y pendiente de adjudicación de dicha reclamación. Al así proceder, el dictamen del TPI no constituye una sentencia de la cual pueda presentarse un recurso de apelación.

De igual forma, debemos aclarar que el dictamen no es una sentencia parcial, por no cumplir con los requisitos de la Regla 42.3 de las de Procedimiento Civil, *supra*. Así pues, debemos concluir que el dictamen impugnado es una resolución interlocutoria que no culmina el pleito en su totalidad, por lo cual acogemos el presente como un recurso discrecional de *certiorari*. Con ello en mente y dada

la naturaleza de la actuación del TPI, resolvemos que, en este caso, no están presentes ninguno de los criterios de la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, para atender el recurso. Aclaramos que con esta determinación no estamos adjudicando si procede o no la reconvención. Por el contrario, lo más adecuado es que el TPI disponga de la totalidad de las reclamaciones de las partes de epígrafe, pues lo contrario constituiría un fraccionamiento indebido del caso.

IV.

Por los fundamentos antes expuestos, **denegamos** el recurso de *certiorari*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones